**No. 2024-1102**

*In the*

# United States Court of Appeals

*for the*

# Federal Circuit

TRACKTIME, LLC,
*Plaintiff-Appellant,*

v.

AMAZON.COM SERVICES LLC, AUDIBLE, INC.,
*Defendants-Appellees.*

*Appeal from the United States District Court for the District of Delaware in No. 1:18-cv-01518-MN · Judge Maryellen Noreika*

## RESPONSE BRIEF OF DEFENDANTS-APPELLEES AMAZON.COM SERVICES LLC AND AUDIBLE, INC.

J. DAVID HADDEN
SAINA S. SHAMILOV
TODD R. GREGORIAN
RAVI R. RANGANATH
FENWICK & WEST LLP
801 California Street
Mountain View, California 94041
(650) 988-8500

JONATHAN T. MCMICHAEL
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, Washington 98101
(206) 389-4583

*Counsel for Defendants-Appellees, Amazon.com, Services LLC and Audible, Inc.*

Dated: March 28, 2025

# EXEMPLARY PATENT CLAIMS AT ISSUE

## U.S. Patent No. 8,856,638

9. A method for a multimedia seek sequence using a synchronization index and a mobile computing device comprising the steps:

[a] displaying on a mobile computing device text from a synchronization index, wherein said synchronization index comprises respective times within multimedia corresponding to a word or range of words and wherein said text is displayed other than as a web page;

[b] wherein said mobile computing device comprises a viewing screen and a touch-sensitive input interface;

[c] receiving information indicating a user's selected mobile computing device touch-sensitive input interface gesture performed on a portion of said viewing screen corresponding to a word, or range of words, from said synchronization index, wherein said gesture is recognized by said touch-sensitive input interface;

[d] performing a data lookup using said synchronization index, wherein said synchronization index is referenced to provide data for a time location t1 that corresponds to said word or range of words selected by the recognized gesture; and

[e] seeking on said mobile computing device multimedia corresponding to said synchronization index, and if found, accessing multimedia at t1.

**U.S. Patent No. 8,862,978**

1. A method for social networking with a mobile computing device comprising:

providing for use on a mobile computing device a synchronization index, wherein said synchronization index is associated to multimedia, wherein the synchronization index comprises an electronic transcript that indicates text corresponding to audio from the multimedia, and wherein the synchronization index indicates respective times within the multimedia corresponding to when a word or range of words is audible in the multimedia;

providing mobile computing device software, wherein said mobile computing device software comprises executable program code configured to receive the synchronization index, and wherein said text is able to be displayed other than as a web page,

wherein said mobile computing device comprises a viewing screen and a touch-sensitive input interface,

wherein said viewing screen is able to display multimedia and text from said synchronization index,

wherein performing a user's selected gesture on a portion of said viewing screen corresponding to a portion of said text is recognized by said touch-sensitive input interface to facilitate annotation of a portion of said synchronization index, and

wherein said mobile computing device software comprises executable program code configured to facilitate annotation of a portion of said synchronization index responsive to user input received by the mobile computing device; and

communicating said annotation for subsequent retrieval on a second computing device via a network.

2. The method of claim 1, wherein said mobile computing device software comprises executable program code configured to synchronously play said associated multimedia with said synchronization index other than as part of a web page.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-1102

**Short Case Caption** TrackTime, LLC v. Amazon.com Services LLC

**Filing Party/Entity** Amazon.com Services LLC; Audible, Inc.

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/06/2023 Signature: /s/ J. David Hadden

Name: J. David Hadden

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Amazon.com Services LLC | | Amazon.com, Inc. |
| Audible, Inc. | | Amazon.com, Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☑ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**Additional attachment to Form 9. Certificate of Interest**

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court of agency or (b) are expected to appear in the court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47(a)(4).

For Defendant-Appellee Amazon.Com Services LLC:

Johnathan L. Chai, S.J. Hahn, Johnson Kuncheria, Christopher S. Lavin, Geoffrey Miller, Jeffrey Ware, and Min Wu of Fenwick & West LLP

Earl Mah, formerly of Fenwick & West LLP

Steven J. Balick and Andrew C. Mayo of Ashby & Geddes, P.A.

For Defendant-Appellee Audible, Inc.:

Johnathan L. Chai, S.J. Hahn, Johnson Kuncheria, Christopher S. Lavin, Geoffrey Miller, Jeffrey Ware, and Min Wu of Fenwick & West LLP

Earl Mah, Sapna S. Mehta, and Eugene Prokopenko, formerly of Fenwick & West LLP

Steven J. Balick and Andrew C. Mayo of Ashby & Geddes, P.A.

## TABLE OF CONTENTS

**Page**

EXEMPLARY PATENT CLAIMS AT ISSUE ........ i

CERTIFICATE OF INTEREST ........ iii

TABLE OF ABBREVIATIONS ........ xviii

STATEMENT OF RELATED CASES ........ xix

INTRODUCTION ........ 1

STATEMENT OF ISSUES ........ 2

STATEMENT OF THE CASE ........ 3

I. THE PATENTS ........ 3

A. The shared specification ........ 3

B. The asserted claims ........ 5

II. PROCEDURAL HISTORY ........ 6

A. The district court held the patents ineligible under §101. ........ 6

B. The district court held the 978 patent invalid as indefinite. ........ 6

C. The jury found the asserted claims of the 638 patent conventional, invalid on multiple grounds, and not infringed. ........ 7

SUMMARY OF ARGUMENT ........ 10

ARGUMENT ........ 11

I. STANDARD OF REVIEW ........ 11

II. THE DISTRICT COURT CORRECTLY DENIED JUDGMENT AS A MATTER OF LAW ........ 12

**TABLE OF CONTENTS**
**(Continued)**

**Page**

A. Claim 9 of the 638 patent is unpatentable under §101. ............12

1. The claim is directed to an abstract idea. .......................13

2. The claim lacks an inventive concept............................17

B. Claim 9 of the 638 patent is invalid under §§102 and 103.........................................................................22

1. Substantial evidence showed that Toub anticipates. ..................................................22

2. Substantial evidence showed that LiveNote anticipates....................................................26

3. Substantial evidence showed that Master anticipates....................................................28

4. Substantial evidence showed that Master renders the claim obvious.........................................................30

5. Substantial evidence showed that Master is prior art. ..........................................................................33

C. The district court correctly denied judgment as a matter of law on infringement.................................................37

III. THE DISTRICT COURT CORRECTLY DENIED A NEW TRIAL ..........................................................................44

A. TrackTime is not entitled to a new trial based on alleged inconsistency in the verdict. ....................................................45

B. TrackTime is not entitled to a new trial based on the district court's evidentiary rulings. ..........................................47

1. TrackTime is not entitled to a new trial based on exclusion of the draft patent application. .......................48

2. TrackTime is not entitled to a new trial based on exclusion of an unasserted Amazon patent....................52

**TABLE OF CONTENTS**
**(Continued)**

**Page**

IV. THE DISTRICT COURT CORRECTLY HELD THE 978 PATENT CLAIMS INVALID AS INDEFINITE ..... 53

A. The patent employs functional claiming and is thus subject to §112(6). ..... 54

B. The patent fails under §112(6) because the specification recites no structure or algorithm for the claimed functions. ..... 61

CONCLUSION ..... 63

CERTIFICATE OF COMPLIANCE ..... 65

CERTIFICATE OF SERVICE ..... 66

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*,
889 F.3d 735 (Fed. Cir. 2018) ....................46

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) ....................12

*Abbott Labs. v. Syntron Bioresearch, Inc.*,
334 F.3d 1343 (Fed. Cir. 2003) ....................38, 39

*AbbVie Deutschland GmbH v. Janssen Biotech, Inc.*,
759 F.3d 1285 (Fed. Cir. 2014) ....................44

*Adaptive Streaming, Inc. v. Netflix, Inc.*,
836 F. App'x 900 (Fed. Cir. 2020) ....................17, 21

*Adasa Inc. v. Avery Dennison Corp.*,
55 F.4th 900 (Fed. Cir. 2022) ....................24

*Affinity Labs of Tex, LLC v. Amazon.com, Inc.*,
838 F.3d 1266 (Fed. Cir. 2016) ....................13

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
97 F.4th 1371 (Fed. Cir. 2024) ....................13

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014)....................*passim*

*Almirall LLC v. Taro Pharm. Indus. Ltd.*,
2019 WL 316742 (D. Del. Jan. 24, 2019) ....................51

*Apator Miitors ApS v. Kamstrup A/S*,
887 F.3d 1293 (Fed. Cir. 2018) ....................35, 36, 48, 50

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) ....................21

*Augme Techs., Inc. v. Yahoo! Inc.*,
755 F.3d 1326 (Fed. Cir. 2014) ....................61

## TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*B. Braun Med., Inc. v. Abbott Labs.*,
124 F.3d 1419 (Fed. Cir. 1997) ....................................................................63

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ...............................................................18, 19

*Belden Inc. v. Berk-Tek LLC*,
805 F.3d 1064 (Fed. Cir. 2015) ....................................................................28

*Benne v. Int'l Bus. Machines Corp.*,
87 F.3d 419 (10th Cir. 1996) ........................................................................53

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) ...................................................................13

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) ......................................................................42

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
246 F.3d 1368 (Fed. Cir. 2001) ....................................................................24

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
113 F.4th 1359 (Fed. Cir. 2024) ...................................................................17

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
631 F.3d 1279 (Fed. Cir. 2011) ....................................................................38

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019) .........................................................17, 18, 19

*Coleman v. Dines*,
754 F.2d 353 (Fed. Cir. 1985) ......................................................................50

*Comaper Corp. v. Antec, Inc.*,
596 F.3d 1343 (Fed. Cir. 2010) ....................................................................43

*Comcast IP Holdings I LLC v. Sprint Commc'ns Co.*,
850 F.3d 1302 (Fed. Cir. 2017) ....................................................................44

*Core Wireless Licensing S.A.R.L. v. L.G. Elecs., Inc.*,
880 F.3d 1356 (Fed. Cir. 2018) ...............................................................15, 16

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018) ....................15, 16, 41

*Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*,
597 F.3d 1374 (Fed. Cir. 2010) ....................47

*Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*,
899 F.3d 1291 (Fed. Cir. 2018) ....................55, 58

*Dyfan, LLC v. Target Corp.*,
28 F.4th 1360 (Fed. Cir. 2022) ....................61

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
800 F.3d 1375 (Fed. Cir. 2015) ....................34

*Egenera, Inc. v. Cisco Sys., Inc.*,
972 F.3d 1367 (Fed. Cir. 2020) ....................55, 56, 57

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ....................12, 15

*EMC Corp. v. Pure Storage, Inc.*,
204 F. Supp. 3d 749 (D. Del. 2016)....................50

*Engel Indus., Inc. v. Lockformer Co.*,
96 F.3d 1398 (Fed. Cir. 1996) ....................41

*ePlus, Inc. v. Lawson Software, Inc.*,
700 F.3d 509 (Fed. Cir. 2012) ....................60

*Exergen Corp. v. Kaz USA, Inc.*,
725 F. App'x 959 (Fed. Cir. 2018) ....................22

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
839 F.3d 1089 (Fed. Cir. 2016) ....................17

*Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*,
784 F.3d 177 (3d Cir. 2015) ....................46

*Function Media, LLC v. Google Inc.*,
708 F.3d 1310 (Fed. Cir. 2013) ....................47

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*GN Netcom, Inc. v. Planatronics, Inc.*,
930 F.3d 76 (3d Cir. 2019) ....................48

*Goodman v. Pennsylvania Tpk. Comm'n*,
293 F.3d 655 (3d Cir. 2002) ....................48

*Haskell v. Colebourne*,
671 F.2d 1362 (C.C.P.A. 1982) ....................51

*Hirst v. Inverness Hotel Corp.*,
544 F.3d 221 (3d Cir. 2008) ....................47

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
802 F.2d 1367 (Fed. Cir. 1986) ....................35

*In re Enhanced Sec. Rsch., LLC*,
739 F.3d 1347 (Fed. Cir. 2014) ....................37

*In re Giacomini*,
612 F.3d 1380 (Fed. Cir. 2010) ....................34

*In re GPAC Inc.*,
57 F.3d 1573 (Fed. Cir. 1995) ....................32

*In re Mulder*,
716 F.2d 1542 (Fed. Cir. 1983) ....................37

*In re TLI Commc'ns LLC Pat. Litig.*,
823 F.3d 607 (Fed. Cir. 2016) ....................21

*Int'l Bus. Machines Corp. v. Zillow Group, Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) ....................13, 15

*Intell. Ventures I LLC v. Erie Indem. Co.*,
850 F.3d 1315 (Fed. Cir. 2017) ....................13

*Jester v. Hutt*,
937 F.3d 233 (3d Cir. 2019) ....................11

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
292 F.3d 728 (Fed. Cir. 2002) ....................35, 36, 48

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Kenexa Brassring, Inc. v. Taleo Corp.*,
751 F. Supp. 2d 735 (D. Del. 2010)........................................................50

*KOM Software Inc. v. NetApp, Inc.*,
697 F. Supp. 3d 203 (D. Del. 2023)........................................................20

*Leapfrog Enters., Inc. v. Fisher-Price, Inc.*,
485 F.3d 1157 (Fed. Cir. 2007) ..............................................................32

*Leonard v. Stemtech Int'l Inc.*,
834 F.3d 376 (3d Cir. 2016) ..................................................................44

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*,
790 F.3d 1329 (Fed. Cir. 2015) ..............................................................26

*LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*,
275 F.3d 1347 (Fed. Cir. 2001) ..............................................................31

*Mahurkar v. C.R. Bard, Inc.*,
79 F.3d 1572 (Fed. Cir. 1996) ................................................................37

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996)...........59, 62

*Mass. Inst. of Tech. & Elecs. For Imaging, Inc. v. Abacus Software*,
462 F.3d 1344 (Fed. Cir. 2006) ..............................................................55

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
566 U.S. 66 (2012)..................................................................................12

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ........................................................16, 17

*MobileMedia Ideas LLC v. Apple Inc.*,
780 F.3d 1159 (Fed. Cir. 2015) ......................................................*passim*

*Monteiro v. City of Elizabeth*,
436 F.3d 397 (3d Cir. 2006) ..................................................................11

## TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Morsa v. Facebook, Inc.*,
77 F. Supp. 3d 1007 (C.D. Cal. 2014), *aff'd*, 622 F. App'x 915 (Fed. Cir. 2015) ....... 53

*Motorola, Inc. v. Interdigital Tech. Corp.*,
121 F.3d 1461 (Fed. Cir. 1997) ....... 24

*Nature Simulation Sys. Inc. v. Autodesk, Inc.*,
50 F.4th 1358 (Fed. Cir. 2022) ....... 11

*Noah Sys., Inc. v. Intuit Inc.*,
675 F.3d 1302 (Fed. Cir. 2012) ....... 63

*Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*,
719 F.3d 1346 (Fed. Cir. 2013) ....... 19

*Pediatrix Screening, Inc., v. TeleChem Int'l, Inc.*,
602 F.3d 541 (3d Cir. 2010) ....... 47

*Pfizer, Inc. v. Apotex*,
Inc., 480 F.3d 1348 (Fed. Cir. 2007) ....... 19

*Pregis Corp. v. Kappos*,
700 F.3d 1348 (Fed. Cir. 2012) ....... 31

*Randall Mfg. v. Rea*,
733 F.3d 1355 (Fed. Cir. 2013) ....... 31

*Rembrandt Vision Techs., LP v. Johnson & Johnson Vision Care, Inc.*,
725 F.3d 1377 (Fed. Cir. 2013) ....... 51

*Robert Bosch, LLC v. Snap-On Inc.*,
769 F.3d 1094 (Fed. Cir. 2014) ....... *passim*

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ....... 13, 15

*Saso Golf, Inc. v. Nike, Inc.*,
843 F. App'x 291 (Fed. Cir. 2021) ....... 57, 59

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Schering Corp. v. Geneva Pharms.*,
339 F.3d 1373 (Fed. Cir. 2003) ....................24

*Seattle Box Co. v. Indus. Crating & Packing, Inc.*,
731 F.2d 818 (Fed. Cir. 1984) ....................59

*Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
637 F.3d 1269 (Fed. Cir. 2011) ....................11

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ....................2

*Solvay, S.A. v. Honeywell Int'l Inc.*,
886 F. Supp. 2d 396 (D. Del. 2012), *aff'd*, 742 F.3d 998 (Fed. Cir. 2014)........52

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016) ....................20

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015)....................11, 59

*Trading Techs. Int'l, Inc. v. CQG, INC.*,
675 F. App'x 1001 (Fed. Cir. 2017)....................15

*Trading Techs. Int'l, Inc. v. IBG, LLC*,
921 F.3d 1378 (Fed. Cir. 2019) ....................15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) ....................21

*United States v. DeMuro*,
677 F.3d 550 (3d Cir. 2012) ....................49

*United States v. Green*,
617 F.3d 233 (3d Cir. 2010) ....................48

*United States v. Kaszuba*,
823 F. App'x 77 (3d Cir. 2020)....................49

*Vectura, Ltd. v. GlaxoSmithKline LLC*,
981 F.3d 1030 (Fed. Cir. 2020) ....................44

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Versata Software, Inc. v. SAP Am., Inc.*,
717 F.3d 1255 (Fed. Cir. 2013) .................................................................*passim*

*Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.*,
143 U.S. 275 (1892)...........................................................................................49

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F. 3d 10 (Fed. Cir. 2012) ...................................................................22, 23

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015) .................................................................*passim*

*Woodland Tr. v. Flowertree Nursery, Inc.*,
148 F.3d 1368 (Fed. Cir. 1998) .......................................................................50

*WSOU Invs. LLC v. Google LLC*,
2023 WL 6889033 (Fed. Cir. 2023) ...........................................................60, 61

*Xpertuniverse, Inc. v. Cisco Sys., Inc.*,
2013 WL 6118447 (D. Del. Nov. 20, 2013)......................................................47

*Z4 Techs., Inc. v. Microsoft Corp.*,
507 F.3d 1340 (Fed. Cir. 2007) .......................................................................22

*Zeroclick, LLC v. Apple Inc.*,
891 F.3d 1003 (Fed. Cir. 2018) .................................................................60, 61

**STATUTES AND RULES**

35 U.S.C. § 101 ...........................................................................................*passim*

35 U.S.C. § 102 ..................................................................................................60

35 U.S.C. § 103 ..................................................................................................60

35 U.S.C. § 112 ...........................................................................................*passim*

Fed. R. Civ. P. 61 ...............................................................................................48

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| 638 patent | U.S. Patent No. 8,856,638 |
| 978 patent | U.S. Patent No. 8,862,978 |
| Amazon | Defendants-Appellees Amazon.com Services LLC and Audible Inc. |
| Audible | Defendant-Appellee Audible, Inc. |
| asserted patents / asserted claims | The patents/claims at issue on appeal:<br>638 patent (claim 9)<br>978 patent (claims 1-2) |
| TrackTime | Plaintiff-Appellant TrackTime, LLC |
| OB | TrackTime's Opening Brief |

## STATEMENT OF RELATED CASES

Amazon knows of no other cases pending before this Court or before a lower court or agency that will directly affect or be directly affected by this Court's decision in this appeal.

## INTRODUCTION

The asserted patents claim the idea to use an index to synchronize text and multimedia—a practice that the patentee copied from software he used as a litigation consultant—and apply it on a touchscreen device. Like many others the Court has invalidated under §101, the patents contain no solution to implement this idea and instead instruct use of conventional elements. The district court was thus prepared to invalidate the claims at the pleading stage. TrackTime reached trial only by asserting that the 638 patent claimed an unconventional "ordered combination" of elements. But once there, TrackTime merely argued that its idea was novel—it presented no evidence of an unconventional ordered combination—while Amazon presented expert testimony that the claim ordering was conventional.

TrackTime appeals after a jury found against it not just on that issue, but on four additional invalidity grounds, and infringement. The Court may dispose of the appeal concerning the 638 patent on any of these grounds. Conversely, to undo the trial result, TrackTime must show a lack of evidence, or prejudicial error, for *six* different grounds. It did not do so. The district court conducted a meticulous trial without error and substantial evidence supports the verdict.

TrackTime also seeks to resurrect two claims of the 978 patent that the district court held indefinite before trial. Their indefiniteness problem stems from the same basic failure—the patentee claiming an aspiration rather than an invention. These

978 patent claims thus present a straightforward application of §112(6)—they claim "executable program code" that is "configured to" achieve various results, with no corresponding structure for performing the desired functions. The Court should affirm.

## STATEMENT OF ISSUES

Claim 9 of the 638 patent:[1]

1. Whether the claim is patent-ineligible because (a) it is directed to an abstract idea and (b) substantial evidence supports the verdict that the ordered combination of claim elements was conventional, and thus did not impart any inventive concept.

2. Whether substantial evidence supports the verdict that the claim is invalid as anticipated by each of Toub, LiveNote, and Master; and obvious in view of Master.

3. Whether substantial evidence supports the verdict that Amazon did not infringe.

4. Whether TrackTime may obtain a new trial based on an alleged inconsistency in the verdict or evidentiary rulings.

---

[1] TrackTime made passing references to claim 1 of the 638 patent but developed no argument about it. *See* OB at v-vi, 25-30, 33-40, 40-44, *etc.* (arguing claim 9 only). TrackTime has thus waived its appeal concerning that claim. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319-20 (Fed. Cir. 2006).

Claims 1 and 2 of the 978 patent:

5. Whether the claims are indefinite under §112(6) because their recitation of "executable program code" is means-plus-function language without sufficient structure.

## STATEMENT OF THE CASE

### I. THE PATENTS

#### A. The shared specification

The asserted patents are titled "Methods and System for Remote Control for Multimedia Seeking" (638 patent) and "Methods and Systems for Facilitating an Online Social Network" (978 patent). Appx59, Appx142. They share a specification and claim priority to the same provisional application filed January 3, 2011. Appx59-141, Appx142-223.

The patents purport to disclose new ways to present media on a mobile device. Appx59, Appx109 (3:54-55). The specification describes a problem in the legal industry addressed by various commercial software products. Litigants preserve deposition testimony with both a text transcript and a video. Appx110 (5:40-6:8). Attorneys may annotate the transcript to identify video portions to play at trial. Appx111 (7:63-8:8). To cut the video into those portions, the transcript is "timestamped"—*i.e.*, portions of the text are linked to the corresponding time those words are spoken in the video. The result is a "synchronization index," essentially a table matching the text to times, allowing a user to navigate the video. *Id.* (8:11-

27). The specification admits that the "synchronization index" was conventional and used by commercial software like Sanction II, LiveNote, eTran, and TrialDirector, and thus not an inventive contribution of the patents. *Id.* (8:17-22, 8:59-63), Appx112 (9:25-26), Appx121 (28:18-32).

The specification alleges those commercial software products operated only on personal computers running Microsoft Windows and thus had the shortcoming that their use of processing resources made them inappropriate for mobile devices. Appx110 (6:23-29), Appx112 (9:30-43). The purported solution of the patents is to move their indexing and synchronization functions onto a generic mobile touchscreen device. Appx124 (33:63-34:10). In that environment, a user could "perform a gesture on the text to cause the multimedia to jump to a desired location and begin playback." Appx108 (1:58-63); *see also* Appx124 (33:63-34:2), Appx127 (40:34-41). A user could also use conventional touchscreen controls to annotate text. Appx124-25 (34:60-35:8).

But there is nothing inventive about any of this. The specification expressly states that these functions use the preexisting synchronization index. Appx109 (3:60-63), Appx111 (8:17-22, 8:59-63), Appx112 (9:25-26), Appx121 (28:18-32). It also acknowledges that the other pieces necessary for these functions—the mobile touchscreen device, the operating system software, and the act of performing gestures on a touch sensitive viewing screen—already existed and were

commonplace. Appx116 (18:3-29, 17:48-50), Appx124 (33:31-36). Yet there are no technical details on how to implement a synchronization index on a mobile touchscreen device. Appx6169-71 (700:25-702:11).

### B. The asserted claims

Claim 9 of the 638 patent is reprinted on the inside cover and has the following steps: (1) displaying text corresponding to multimedia on a mobile touchscreen device, (2) receiving a user's selection of a portion of the displayed text through a gesture on the touchscreen, (3) performing a data "lookup" using a synchronization index for a time location that corresponds to a word/range of words, and (4) seeking on the mobile device for the multimedia and, if found, accessing the multimedia at the specified time.

Claim 1 of the 978 patent recites similarly: (1) displaying text corresponding to multimedia on a touchscreen mobile device, (2) receiving and saving a user's annotations to the displayed text through the touchscreen, and (3) communicating the annotations over a network that are retrievable on another mobile device. Appx222. Claim 2 depends from claim 1, and further requires that the mobile device synchronously play the multimedia with the synchronization index other than as part of a web page. *Id.*

## II. PROCEDURAL HISTORY

### A. The district court held the patents ineligible under §101.

TrackTime filed suit in 2018. Appx270-333. On Amazon's motion to dismiss, the district court held the asserted patents are directed to the abstract idea of "using an index to synchronize text and multimedia." Appx39-40. It observed that they take "something that was done before by hand, for example an attorney matching up a transcript with a video, or something that was done by larger computers and claim[s] that process [is] now done on mobile devices, but without any improvement in the functioning of the mobile devices or any recitation in the claims of how any purported improvement is achieved." Appx42. The court further held the claims lack an inventive concept "because they are simply well-known generic computer components functioning in a conventional way and their ordered combination is the only logical order that there can be." Appx41. TrackTime amended the complaint, and the court permitted the case to proceed without prejudice to Amazon renewing its ineligibility challenge. Appx43, Appx701.

### B. The district court held the 978 patent invalid as indefinite.

At claim construction, the district court held claims 1 and 2 of the 978 patent indefinite because the "executable program code" elements are means-plus-function lacking sufficient structure:

- "executable program code configured to facilitate annotation of a portion of said synchronization index" (Appx222); and

- "executable program code configured to synchronously play said associated multimedia with said synchronization index." *Id.*

Appx51-58. The district court credited Amazon's expert testimony that "executable program code" in the specification is a generic black box without definite structure and stated that TrackTime failed to show that a skilled artisan would associate the term with disclosures in the specification. Appx52-54. Thus, it concluded that both claims lack structure and are indefinite. Appx57-58.

### C. The jury found the asserted claims of the 638 patent conventional, invalid on multiple grounds, and not infringed.

At trial, TrackTime accused X-Ray Lyrics in the Amazon Music app and Immersion Reading in the Audible app of infringing claims 1 and 9 of the 638 patent. Appx5379.[2] Amazon denied infringement; asserted that the claim limitations were conventional (*Alice* step two); and asserted that the claims were anticipated by and obvious in view of Toub, LiveNote, and Master.

The jury heard evidence including testimony from Curt Evans, the owner of TrackTime and patentee. Mr. Evans worked as a litigation consultant at trials in the early 2000s, where he operated trial software described in the specification, including Sanction II. Appx5721 (289:19-22), Appx5684-85 (252:24-253:8),

[2] TrackTime did not appeal the jury's noninfringement finding concerning Immersion Reading.

Appx121 (28:18-32). Sanction II displayed multimedia and its accompanying text transcript:




Appx5721 (289:19-22), Appx5724 (292:3-20), Appx8174, Appx8176. It used a "synchronization index" (visible in the bottom center) to allow a user to browse a transcript, click on a line, and "jump" to that location in the video. Appx5724-25 (292:21-293:21), Appx8428.

After Apple released the iPhone and iPad touchscreen devices, and the associated "App Store" offering third-party applications, Appx5627 (231:3-15), Mr. Evans had what he called "today's million dollar idea." Appx8465. That idea was to make a "mini Sanction" for iPhones. *Id.*, Appx5729-30 (297:18-298:3),

Appx8239, Appx5761 (329:9-14). He hired a developer, but after a year of work, could not create a working app. Appx5735 (303:1-22), Appx8469.

Mr. Evans then turned to the Patent Office. For his patent application, he created figures showing exemplary "interfaces" using photo-editing software to stitch together a picture of an iPad he found on the internet then adding screenshots of deposition video being played in Sanction II. *See* Appx5738-40 (306:13-16, 307:15-308:8), Appx5740-41 (308:22-309:19), Appx79, Appx81, Appx86-94. Figure 16 appears below:



Fig. 16

Appx5741 (309:4-19). Mr. Evans admitted that the synchronization index in the specification existed in Sanction II. Appx5744-46 (312:25-314:4, 314:16-19), Appx5748 (316:7-17). Amazon's technical expert Dr. Schonfeld testified that

synchronization indexes were well-known and conventional, and not inventive. Appx6168-71 (699:16-702:11).

TrackTime elected to argue for patent-eligibility only that the ordered combination of the claims, rather than any individual element, was unconventional. Its expert identified the ordered combination as the entirety of the claim—"human touch on the word or range of words that using a synchronization index to move the position of the playback of the multimedia, that's in reference to the range of words that are described when on the touch, so the orders are used as an actuator for navigation." Appx6386-87 (878:22-879:20). Further, he offered no basis to conclude that this was inventive. Meanwhile, Dr. Schonfeld testified that the ordered combination was conventional and not inventive. Appx6168-75 (699:16-706:20).

The jury found that the accused products do not infringe; the ordered combination of claim elements were conventional at the time of invention; and the asserted claims were anticipated by Toub, LiveNote, and Master, and obvious in view of Master. Appx5378-87. The district court denied judgment as a matter of law and a new trial, and entered judgment. Appx31, Appx3-30, Appx32-33.

## SUMMARY OF ARGUMENT

TrackTime must at a minimum show error for five invalidity grounds and noninfringement to undo the judgment on the 638 patent. That judgment is sound—

it follows a trial in which the jury found conventionality, invalidity, and no infringement based on substantial evidence for each ground. The Court may affirm based on any single ground.

The district court correctly held the asserted claims of the 978 patent indefinite. Those claims recite means-plus-function elements—black-box "executable program code" configured to carry out the claimed functions—without sufficient structure and are thus invalid.

## ARGUMENT

### I. STANDARD OF REVIEW

The Court applies the procedural law of the regional circuit when reviewing a denial of judgment as a matter of law or a new trial. *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.,* 637 F.3d 1269, 1277 (Fed. Cir. 2011). The Third Circuit reviews denial of judgment as a matter of law *de novo*. *Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006). It reviews denial of a new trial for abuse of discretion. *Jester v. Hutt*, 937 F.3d 233, 238 (3d Cir. 2019).

Claim construction—including whether a claim term is invalid as indefinite—is an issue of law that the Court reviews *de novo*. *Nature Simulation Sys. Inc. v. Autodesk, Inc.*, 50 F.4th 1358, 1360 (Fed. Cir. 2022). Factual findings underlying a determination of indefiniteness are reviewed for clear error. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321-22 (2015).

## II. THE DISTRICT COURT CORRECTLY DENIED JUDGMENT AS A MATTER OF LAW

### A. Claim 9 of the 638 patent is unpatentable under §101.

The two-part *Alice* test governs patent-eligibility under §101. At step one, the court asks whether the claim is directed to ineligible subject matter, such as an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). If so, at step two, the court must decide whether the claim adds an "inventive concept" that is "significantly more" the idea itself. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014) (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 72-73 (2012)). Patent-eligibility is a question of law but may involve fact questions at step two. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). Specifically, a finding that the claim elements—assessed individually and in combination—are "well-understood, routine, [and] conventional" informs whether the claim imparts an "inventive concept." *Id.*

Here, TrackTime conceded that the individual claim elements were conventional. OB39. The jury considered only whether any ordered combination of claim elements was unconventional. Appx6506-07 (966:9-967:4 (jury instruction)). The jury found there was not. Because that finding is supported by substantial evidence, and the district court's legal conclusions holding the claim ineligible are correct, the Court should affirm.

**1. The claim is directed to an abstract idea.**

The district court ruled correctly that claim 9 is directed to the abstract idea of using an index to synchronize text and multimedia. Appx39. Claims are abstract where they "do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Affinity Labs of Tex, LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016); *see also Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024). "[T]he steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts." *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). Applying these principles, the Court has held abstract claims that use an index to retrieve data or navigate among displays, where they lacked technical details improving the underlying computer functionality. *See Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1329-30 (Fed. Cir. 2017) ("creating an index and using that index to search for and retrieve data"); *Int'l Bus. Machines Corp. v. Zillow Group, Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022) ("*IBM*") ("presenting a map, having a user select a portion of that map, and then synchronizing the map and its corresponding list to display a more limited data set to the user").

Claim 9 is the same. It recites a method of "using a synchronization index" to correlate text and multimedia, so a user can select text on a mobile device to navigate multimedia. Appx140. But it recites no technical solution to achieve this result or any improvement to the underlying computing technology. Conventional computing components carry out the idea. Appx6168-72, Appx6132-33 (663:9-664:3). The "mobile computing device" is a generic touchscreen device like an iPhone. Appx116 (18:3-18), Appx125 (35:1-4). The "synchronization index" existed for correlating text and multimedia. Appx111 (8:59-63), Appx121 (28:17-43), Appx130 (46:37-52). And allowing a user to select text in a transcript and jump to that point in the multimedia was also conventional; indeed, the patentee copied that function from other software. Appx108 (1:20-62); see also Appx110-12 (6:9-9:23). But the 638 patent discloses no technical solutions implementing it on a mobile device. Claim 9 thus recites no more than an idea for conventional mobile touchscreen devices and is abstract at *Alice* step one.

TrackTime argues that the claim is directed to an improved "user interface" for navigating multimedia files. OB34-35, 37. But the claim contains no improvement to existing user interface technology whatsoever.

The Court has drawn a clear distinction in its §101 user interface cases. On the one hand, claims are patent-eligible that disclose a "specific, structured graphical user interface [that is] paired with a prescribed functionality directly related to

the…structure that…resolves a specifically identified problem in the prior state of the art." *Trading Techs. Int'l, Inc. v. CQG, INC.*, 675 F. App'x 1001, 1004 (Fed. Cir. 2017). Such patents do not merely claim the use of the interface "as a tool to conduct a known or obvious process." *Id.* at 1005; *see also Core Wireless Licensing S.A.R.L. v. L.G. Elecs., Inc.*, 880 F.3d 1356, 1359, 1362-63 (Fed. Cir. 2018); *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1002 (Fed. Cir. 2018).

On the other hand, "merely presenting the results of abstract processes of collecting and analyzing information" is abstract—it is simply "an ancillary part of such collection and analysis." *Elec. Power Grp.*, 830 F.3d at 1354. And while specifying different data to display may alter the appearance of a conventional user interface, that is not a technological improvement to the interface itself that satisfies step one. *See id.*; *IBM*, 50 F.4th at 1378; *Trading Techs. Int'l, Inc. v. IBG, LLC*, 921 F.3d 1378, 1383 (Fed. Cir. 2019); *SAP*, 898 F.3d at 1167.

Claim 9 is firmly in the latter category and abstract at step one. The only limitations that relate to a user interface recite a generic "viewing screen" that "display[s]" "a word, or range of words." Appx140. There is no specific structure or improvement to the interface—just a screen to display words from the index for selection by a user. Appx39. The claim also requires a user's "touch" or "gesture" and thus that the screen is a touchscreen. OB34-35. But these limitations simply describe the conventional operation of a touchscreen. The specification admits that

the purported invention is *not* any new or improved touchscreen or mobile computing device—indeed, the user must provide the iPad or iPhone (or like device). Appx116 (18:3-18), Appx125 (35:1-4). And the specification states that users would perform touchscreen gestures in a conventional manner, *i.e.*, "on an iPad," "similar to the way users may be accustomed to scrolling through text on a web page delivered within the Safari web browser present on iPad and iPhone[.]" Appx124 (33:26-36); see also Appx5761 (329:9-14), Appx5627-28 (231:16-232:8).[3]

TrackTime's fallback argument that the claim is directed to an unspecified "improvement to technology" also fails. *See* OB36. TrackTime compares its claim to *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), but that case is inapt. *McRO* held patents reciting "specific, limited mathematical rules" for automatic animation for 3D animated characters patent-eligible as an advance over the prior art. *Id.* at 1303, 1314. Those rules did not encompass the existing prior art method, and represented a *distinct* process to automate animation. *Id.* Based on this, *McRO* held that "[i]t is the incorporation of the claimed rules, not the use of the computer, that 'improved [the] existing technological process' by

[3] TrackTime's attempts to analogize to user interface cases thus fail. OB35, Appx39. *Core Wireless* concerned an improved user interface for small screen devices—an application summary window reachable from a menu of applications that showed data even for applications "in an un-launched state." 880 F.3d at 1363. And the *Data Engine* patents recited an improved user interface consisting of a "notebook tab" to navigate between prior art three-dimensional spreadsheet pages. 906 F.3d at 1008.

allowing the automation of further tasks." *Id.* (quoting *Alice*, 573 U.S. at 222). In other words, *McRO* claimed a "specific asserted improvement in computer animation" and not merely relying on conventional computers to perform a preexisting process. *See FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1095 (Fed. Cir. 2016) (analyzing *McRO*).

*McRO* is distinguishable because claim 9 is indistinct from the prior art. The specification directs a reader to perform the conventional process of using a synchronization index to navigate multimedia, but on a conventional mobile touchscreen device rather than a full-size computer. The 638 patent does not claim "improved structure or function" for a user interface or any other technology, but rather "a results-oriented abstract idea." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1368-69 (Fed. Cir. 2024). Thus, the district court's step one ruling was correct.

**2. The claim lacks an inventive concept.**

Claims do not recite an inventive concept where the steps as an ordered combination "add nothing" to the idea "that is not already present when the steps are considered separately." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348–49 (Fed. Cir. 2019). It is not enough to point to the whole claim and argue that it is novel. *Id.*; *see also Adaptive Streaming, Inc. v. Netflix, Inc.*, 836 F. App'x 900, 904 (Fed. Cir. 2020). An unconventional ordering of elements must

provide an inventive solution to a problem in the prior art. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016); *Chamberlain,* 935 F.3d at 1348-49 (Fed. Cir. 2019).

*Bascom* illustrates this. There, the claim was directed to a content filtering system that restricted access to internet content on a user's device. 827 F.3d at 1348. The Court held that content filtering was an abstract idea—it was "a longstanding, well-known method of organizing human behavior." *Id*. And that the individual claim limitations were conventional—they recited "generic computer network and Internet components, none of which is inventive by itself." *Id.* at 1349. Yet the ordered combination was inventive because it supplied "a particular, practical application of th[e] abstract idea." *Id.* at 1350. The claim required placing the filtering tool on a remote server but customizing to each user's account. *Id.* This provided added security against tampering, while retaining the customizations available when the tool is installed locally. *Id*. This was a technical improvement over the prior art and thus patent-eligible.

Substantial evidence supports the verdict that claim 9 lacks an unconventional ordered combination. It was undisputed that Mr. Evans did not invent synchronization indexes, timestamping transcripts, clicking to jump to a position in a video, or improvements to touchscreens, mobile computing devices, or streaming media to an iPhone. Appx5726 (294:10-24), Appx5728 (296:2-15); *see also*

Appx6393 (885:5-12). Amazon's expert Dr. Schonfeld explained that the ordered combination of these claim elements was conventional. Appx6168-75 (699:16-706:20). He testified that the claim's order is "the only logical order that [it] can be" to carry out the abstract idea. *Id*. The device must receive text before displaying it, display it before recognizing a gesture on that text, recognize that gesture before it determines an associated time, and determine that time before it jumps to that point in the multimedia. TrackTime didn't contest this—it identified nothing purportedly unconventional in this ordered combination to rebut Dr. Schonfeld's testimony.[4] The jury could reasonably find the ordered combination of elements in claim 9 was conventional.

TrackTime shows no error at *Alice* step two. It argued an unconventional ordered combination based on *novelty* of the claim, and that a challenger's burden is to introduce enough fully anticipating prior art references to show the claim was "conventional." OB38-39. But the Court has held the opposite: "The appropriate question is not whether the entire claim as a whole was well-understood, routine and conventional to a skilled artisan (*i.e.*, whether it lacks novelty)." *Chamberlain*, 935

[4] TrackTime instead points to the fact that Amazon bore the burden of proof on invalidity. OB38. This is no answer, because Amazon satisfied its burden through Dr. Schonfeld's testimony. TrackTime's failure to rebut Amazon's *prima facie* invalidity case is additional support to conclude the jury had a reasonable basis to find conventionality. *See Pfizer, Inc. v. Apotex*, Inc., 480 F.3d 1348, 1359 (Fed. Cir. 2007) (noting patentee's burden of production); *Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*, 719 F.3d 1346, 1352 (Fed. Cir. 2013) (similar).

F.3d at 1348 (cleaned up). Indeed, "it would eviscerate step two of *Alice* if all that were required is for the patents to state that the claims constitute an improvement over the prior art." *KOM Software Inc. v. NetApp, Inc.*, 697 F. Supp. 3d 203, 218 (D. Del. 2023) (Bryson, J.).

TrackTime relies on Mr. Story, Audible's former Chief Scientist, who testified that he was unaware of previous "techniques of using gestures on words as an actuator to change play back position." OB38. That one witness did not recall the state of the art more than a dozen years earlier is not determinative of any issue. But this testimony certainly does not entitle TrackTime to judgment as a matter of law on *conventionality* because, at best, Mr. Story testified that as far as he knew the *idea itself* was novel. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016). Moreover, Mr. Story did not even understand the question he was asked, which concerned an "actuator"—a word that isn't in the claim. Appx5878 (446:20-25 ("I am not 100 percent sure what the word actuator means")), Appx5888-89 (456:16-457:1), Appx6391 (883:15-21). As the district court held, his testimony was but one of "the many pieces of evidence adduced," and did not preclude the jury from weighing other evidence to reach its verdict. Appx11.

Next, TrackTime argues that Amazon did not identify any prior art disclosing the ordered combination—*i.e.*, tapping on text on a touchscreen to jump to a location in video. OB38-39. But again, that is not required. *Synopsys*, 839 F.3d at 1151; *see*

*also Adaptive Streaming*, 836 F. App'x at 904 ("what may be novel and non-obvious may still be abstract"); Appx12. In any event, the jury found three references anticipate the claim. Dr. Schonfeld also explained that the Sanction II software performed the same ordered combination. The claim's only distinction is that it replaces a mouse click with a touch for the user input—*i.e.*, it swaps one conventional user interface action for another. Appx6174-75 (705:15-706:20). This was sufficient for the jury to find conventionality.

Finally, TrackTime argues that Amazon could not prove that the ordered combination is conventional by showing it is "fixed by the abstract idea." OB39-40. But Amazon did not rely on that testimony alone, as just discussed. Moreover, the Court has confirmed many times that using conventional means to perform steps in the order dictated by the abstract idea is not inventive. *E.g., In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 615 (Fed. Cir. 2016); *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1243 (Fed. Cir. 2016) ("It is not enough to point to conventional applications and say 'do it on a computer.'"); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1341 (Fed. Cir. 2017) ("The steps are organized in a completely conventional way"). Dr. Schonfeld's testimony—that the claim steps are ordered as a matter of "logic" the only way they could be to carry out the idea—supports a finding of conventionality.

* * *

Conventionality "is a question of fact and deference must be given to the determination made by the fact finder on this issue." *Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959, 965 (Fed. Cir. 2018). The jury had substantial evidence from which it could reasonably conclude the claim elements in ordered combination were conventional.

**B. Claim 9 of the 638 patent is invalid under §§102 and 103.**

Amazon also presented ample prior art disclosing the claimed method. The Court may affirm on invalidity based on any of the four grounds on which the jury found for Amazon.

**1. Substantial evidence showed that Toub anticipates.**

Anticipation is a question of fact, reviewed for substantial evidence. *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1347 (Fed. Cir. 2007). Testimony by a skilled artisan that explains how a prior art reference discloses each claim element is substantial evidence from which a jury may find anticipation. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F. 3d 10, 24-25 (Fed. Cir. 2012). The Court requires only that the patent challenger provide such an explanation and not rely on "general and conclusory" testimony opining on the ultimate issue. *Id.* at 24-25.

The jury could reasonably conclude that Toub anticipated the claim. Appx6130-41 (661:14-672:22), Appx6332 (824:1-824:15). Toub is a published patent application that discloses a system for navigating multimedia containing both

text and video. Appx8513. A user can browse a transcript, select a portion, and "jump" to that position in the video. Appx6130-32 (661:19-663:5), Appx8513-28. Toub expressly discloses "mobile telephones, [and] pocket computers" as examples of "well known computing systems…suitable for use with the invention." Appx8522 ([0028]). It also discloses a "touch-input device" for accepting user inputs. *Id.* ([0033]), Appx6131-32 (662:25-663:18), Appx6135-36 (666:22-667:17), Appx6140 (671:4-15), Appx6138 (669:2-11).

Toub accomplishes "tap-to-jump" using a "transcription index file"—*i.e.*, "synchronization index" of the claim—that has text with time codes. Appx6131-33 (662:10-17, 663:9-18, 664:9-24), Appx8513 (Abstract), Appx8521 ([0013], [0024]), Appx8525 ([0053]). Amazon's expert Dr. Schonfeld explained how a skilled artisan would understand Toub as disclosing each claim element. Appx6121-24 (652:22-655:3), Appx6130-41 (661:14-672:22), Appx6332 (824:1-824:15). The district court thus held Amazon "supplied enough proof" for the jury to find that Toub anticipated. Appx17-18.

None of TrackTime's arguments shows error in this ruling. First, TrackTime argues that Toub does not disclose or enable use of a "mobile computing device." OB41-42, OB44. Yet Toub discloses "mobile telephones, [and] pocket computers" as examples of "well known computing systems…suitable for use with the invention." Appx8522 ([0028]). While TrackTime argues that this disclosure is not

enabling (OB44), enablement requires only a disclosure sufficient for a skilled artisan to practice the relied-upon aspects of the prior art without undue experimentation, *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1381 (Fed. Cir. 2003), and that disclosure "at a level of detail similar" to the asserted patent satisfies this requirement. *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1471 (Fed. Cir. 1997). The challenger need not show actual creation of a practicing device or software. *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1379 (Fed. Cir. 2001). Toub meets this standard. Dr. Schonfeld explained that mobile devices were conventional and had been for decades, Appx6131-33 (662:25-664:24), Appx6171-72 (702:12-703:11), and a skilled artisan thus would be familiar with them. Appx6119-21 (650:3-652:2). Thus, the jury could reject TrackTime's assertion that Toub disclosed only a "big desktop computer." OB42.

Second, TrackTime argues that Toub does not receive "touch gestures" on words because it does not use the word "touchscreen." OB41-43. But a reference "need not disclose the elements in the very same terms used by the patent." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 910 (Fed. Cir. 2022). What matters is that the reference discloses each claim element. *Id.* Toub discloses "mobile telephones, pocket computers" and "touch-input devices" that "means exactly the same thing" as a touchscreen to a skilled artisan. Appx6332 (824:7-11), Appx6135-

36 (666:22-667:17), Appx6140 (671:4-15), Appx8522 ([0028], [0033]).[5] It also discloses using "well-known manner[s] of selection" like tapping and clicking, which is "how the touch screen pads work." Appx6135-36 (666:22-667:17), Appx8525 ([0053]); *see also* Appx6171-72 (702:10-703:11). A skilled artisan would have understood the "touch-input device" to mean a touchscreen. Appx6332 (824:7-11), Appx6135-36 (666:22-667:17), Appx6140 (671:4-15).

That TrackTime's expert Dr. Hernandez disagreed does not matter. TrackTime argues, in essence, that the jury should have believed his testimony that "touch-input device" refers only to a "trackpad"—a device like a mouse for controlling a computer cursor—and not a "touchscreen." *See* OB42-43. But Dr. Schonfeld testified that "touch-input device" means a touchscreen. The jury was free to credit this testimony and disregard Dr. Hernandez's. *See MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1168 (Fed. Cir. 2015); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1263 (Fed. Cir. 2013).

Third, TrackTime argues that Toub does not disclose "displaying...text from a synchronization index" because such an index must show a "substantial majority" of a transcript's text, while Toub discloses only "snippets." OB43-44. But the claim

[5] TrackTime suggests Dr. Schonfeld "grudgingly admitted" Toub discloses only a "touch sensitive device or touch sensitive input." OB42. But TrackTime asked him whether Toub "contain[s] the word touch screen," and it does not. Appx6324 (816:18-23). Dr. Schonfeld testified that "it means touch screen." Appx6324-25 (816:24-817:3).

has no "substantial majority" limitation, just a requirement to display text. Indeed, the district court clarified this during trial when Dr. Hernandez attempted to invent such a requirement. Appx6398-6400 (890:16-892:15), Appx1355-1405.

While that alone should dispose of this argument, two more reasons warrant its rejection. First, the parties jointly requested construction of one term—"multimedia." Appx44-58. TrackTime never advocated that "displaying…text" means "displaying a substantial majority of text." Thus, it waived such construction. *See Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 790 F.3d 1329, 1341 (Fed. Cir. 2015). Second, even if the claim required a "substantial majority" of the transcript, Dr. Schonfeld explained that Toub discloses an embodiment that meets it, displaying "all of the text," not a "snippet." Appx6138-40 (669:25-671:3), Appx8526 ([0057]). The jury could credit this testimony and find that Toub anticipates. *See MobileMedia,* 780 F.3d at 1168; *Versata*, 717 F.3d at 1263.[6]

**2. Substantial evidence showed that LiveNote anticipates.**

The jury reasonably could conclude that LiveNote anticipated claim 9. LiveNote was software that permitted users to navigate deposition transcripts synchronized with video. Appx6143-54 (674:14-685:2), Appx6331 (823:5-25), Appx8745-9105, Appx8697-8742, Appx8611-59. Mr. Evans used LiveNote in his

[6] TrackTime did not argue any inconsistency between the jury's finding that Toub and LiveNote anticipate, but do not render obvious, claim 9.

work as a litigation consultant. Appx5625-26 (229:22-230:8). LiveNote enabled users to use the transcript to jump to the corresponding location in the video using a "tapping" gesture on a "tablet PC." Appx6145-46 (676:21-677:22), Appx6148-51 (679:23-680:5, 681:6-14, 682:4-21), Appx8762, Appx8906. It describes a portable case format (PCF) file that contains text and video timestamps. As Dr. Schonfeld explained, PCF is "exactly a synchronization index" to a skilled artisan, Appx6152 (683:8-25), Appx6145 (676:9-19), as it allows a user to "scroll…to the part of the transcript you are interested in and then click on a line in the transcript" to move the video "to the corresponding point." Appx6144 (675:14-23), Appx6151 (682:4-21), Appx8844; *see also* Appx8718, Appx8874. The district court held there was substantial evidence for the jury to find that LiveNote anticipated. Appx18-19.

TrackTime contends that LiveNote does not disclose three elements, but that is incorrect as LiveNote discloses them all. First, TrackTime argues that LiveNote discloses no "mobile computing device" that can navigate a transcript using human gesture. OB44-45. It does, in disclosing a "tablet PC" that can accept human gesture to navigate a transcript. Appx6144 (675:14-23), Appx6151 (682:4-21), Appx6148-49 (679:23-680:5), Appx8762, Appx8906. TrackTime even concedes that LiveNote discloses a "tablet PC," which is a mobile computing device that can accept a gesture. OB45, Appx6151 (682:4-21). Second, TrackTime argues that LiveNote only accepts "pen-stylus" input and not "human touch gestures." OB45. This is

irrelevant, as nothing in the claim requires "human touch gestures." Rather, it recites a "touch-sensitive input interface gesture." Touching a pen-stylus to the screen is such a gesture. Appx6151 (682:4-21), Appx6148-49 (679:23-680:5), Appx6331-32 (823:13-824:11). Regardless, Dr. Schonfeld explained that LiveNote discloses a "tablet and you click on it with a pen or a finger." Appx6148-49 (679:23-680:5), Appx6151 (682:4-21). The jury was free to credit his testimony. *See MobileMedia,* 780 F.3d at 1168; *Versata*, 717 F.3d at 1263.[7]

Third, similar to its Toub argument, TrackTime asserts that LiveNote ran on "a big desktop computer," not a "mobile computing device." OB44-46. But "[a] reference must be considered for everything it teaches by way of technology," not just preferred embodiments. *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1076 (Fed. Cir. 2015). Contemporaneous product documentation showed that LiveNote worked on a "tablet PC"—a "mobile computing device"—by accepting tapping gestures to navigate a transcript. Appx6151 (682:4-21), Appx6148-49 (679:23-680:5).

### 3. Substantial evidence showed that Master anticipates.

The jury could reasonably conclude that Master anticipated claim 9. Master is a patent describing a system for "displaying text to end users in coordination with

[7] TrackTime states that LiveNote does not disclose "performing a data lookup using said synchronization index," OB45, but does not elaborate on this argument. Dr. Schonfeld explained that LiveNote satisfies this element by using its "PCF file" to identify highlighted text and find the corresponding time in the video. Appx6149-50 (680:6-681:14).

audio playback." Appx8474-88. It includes a mobile device that accepts touch inputs, such as a "smart phone or tablet." Appx6157-67 (688:1-693:23, 694:18-698:16), Appx6330-6331 (822:10-823:4), Appx8474-88, Appx8489-8512. It uses a synchronization index—an "LRC file"—with text of song lyrics with timestamps. Appx6155-56 (686:11-687:2), Appx6164 (695:8-17), Appx8482-84 (2:66-3:3, 6:13-18). Master originates from work done by Dr. Aaron Master at SoundHound beginning in 2009. Appx6049 (580:3-14), Appx6051 (582:5-20). Master describes a SoundHound music app feature, called "LiveLyrics," that allowed users to view scrolling lyrics as a song played and tap a lyric to jump to that part of the song. Appx6051-54 (582:21-585:20), Appx6155-67 (686:1-698:24). The district court held there was substantial evidence for the jury to find Master anticipates. Appx16.

TrackTime advances just one argument against this ruling: that the provisional application that led to Master places the LRC file on a remote server rather than the mobile device. OB49-50. This argument is irrelevant because nothing in the claim requires the synchronization index to be on the mobile device. Instead, the claim recites *displaying text from* the synchronization index, receiving gestures on *a word or range of words from* the synchronization index, and *performing a data lookup using* the synchronization index. Dr. Schonfeld explained that the LRC file meets these elements. Appx6330-31 (822:10-823:3).

TrackTime's argument is also factually incorrect. The provisional application discloses performing a data "lookup" using an LRC file *either* on the user's device *or* at the server. Appx6167 (698:3-16), Appx6316-17 (808:25-809:3). Rather than address this, TrackTime points to Dr. Hernandez's testimony that even if the synchronization index is "at the phone," the Master system does not perform a "lookup" because it also uses a machine learning process at the server. OB49-50. This is another irrelevant aside because nothing in the claim precludes such a process. Dr. Schonfeld explained that "lookup" in the Master provisional meets the claim by using the LRC file as a synchronization index to determine a time in audio corresponding to a selected lyric. Appx6161-62 (692:2-693:1). The jury was free to credit Dr. Schonfeld's testimony and disregard Dr. Hernandez's. *See MobileMedia,* 780 F.3d at 1168; *Versata*, 717 F.3d at 1263. The district court correctly held that this "'classic example of competing experts' constitutes 'substantial evidence' before the jury." Appx16.

**4. Substantial evidence showed that Master renders the claim obvious.**

A jury also could reasonably conclude that claim 9 is obvious in view of Master. The Court reviews "conclusions on obviousness, a question of law, without deference, and the underlying findings of fact, whether explicit or implicit within the verdict, for substantial evidence." *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1353 (Fed. Cir. 2001). Prior art need not include verbatim

disclosures matching the words in the claim, as the Court considers disclosures with "the background knowledge possessed by a person having ordinary skill in the art" and "the inferences and creative steps that a person of ordinary skill in the art would employ." *Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013). A prior art disclosure combined with explanatory expert testimony and a motivation to modify the prior art to arrive at the claimed invention constitutes substantial evidence. *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1354-56 (Fed. Cir. 2012).

Here, the jury had such evidence. TrackTime's challenge rests on the location of the LRC file as discussed above. After explaining that Master both meets the claim element even with the LRC file at the server and that Master also discloses an LRC file on the mobile device, Dr. Schonfeld testified in the alternative that it was obvious to place the LRC file on the mobile device. Appx6167 (698:3-16). He explained that this minor modification would make "perfect sense" to a skilled artisan because that placement would allow "faster" operation than transmitting information over a network. *Id.* The jury was free to accept this testimony. *See MobileMedia,* 780 F.3d at 1168; *Versata*, 717 F.3d at 1263; *see also Pregis*, 700 F.3d at 1354-56.

None of TrackTime's arguments justifies disturbing the verdict. TrackTime argues that Dr. Schonfeld's testimony is "too conclusory" because he did not explain "why" a skilled artisan would be motivated to modify Master. OB50. But that is

incorrect: Dr. Schonfeld explained that placing the LRC file on the device would make the system run faster. TrackTime provides no reason that this testimony—which it never rebutted—is insufficient. TrackTime also argues that this proposed modification reflects the benefit of hindsight. OB50. But again, Dr. Schonfeld testified otherwise—that the modification "would have been obvious"—*i.e.*, to a skilled artisan at the relevant time. Appx6167 (698:3-16).

Finally, TrackTime argues that the jury overlooked its "strong" evidence of secondary considerations. OB51. But TrackTime identifies just eight lines of Dr. Hernandez's testimony, where he stated that the Amazon Music app had a "wow" factor and received applause at an event when Amazon unveiled a non-accused feature. Appx6390-91 (882:17-22, 882:25-883:1). TrackTime bore the burden of establishing a nexus between any alleged secondary considerations and the merits of the claimed invention. *See In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995). This testimony failed to carry the burden. In any event, Dr. Schonfeld testified that he saw no evidence of commercial success, industry praise, or long-felt and unresolved needs tied to the patent. Appx6167-68 (698:25-699:15). TrackTime's weak secondary considerations cannot overcome Amazon's strong *prima facie* case of obviousness as a matter of law. *See Leapfrog Enters., Inc. v. Fisher-Price, Inc.,* 485 F.3d 1157, 1162 (Fed. Cir. 2007) (holding substantial evidence of several

secondary considerations inadequate to overcome strong showing of invalidity), Appx5382.

### 5. Substantial evidence showed that Master is prior art.

The jury reasonably could conclude that Master predates the 638 patent. Master has earlier application dates than the 638 patent. TrackTime thus bore the burden to prove that it conceived of its complete invention before Master—with independent and contemporaneous corroboration—*and* that it acted with diligence in reducing the invention to practice. It did not do so. Even if TrackTime had, other evidence showed that Master is entitled to a priority date before TrackTime. Each of these provides a basis to affirm the verdict.




First, a jury could reasonably conclude that Master is prior art because its provisional application was filed December 2, 2010, more than one month before the 638 patent's provisional application filed January 3, 2011. Appx8489-8512,

Appx8474-88, Appx8302. Master is entitled to the provisional filing date if the provisional application provides written description support for a claim of Master and the disclosures of Master that invalidate TrackTime's claims. *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1381-82 (Fed. Cir. 2015); *In re Giacomini*, 612 F.3d 1380, 1383 (Fed. Cir. 2010).[8] Dr. Schonfeld showed that it does: he explained how Master and its provisional application disclose claim 9, and how the provisional application provides written description support for claim 1 of Master. Appx6157-62 (688:1-693:23), Appx6164-67 (695:23-698:2, 698:17-20). TrackTime presented no contrary evidence.

Because Master predates the 638 patent, TrackTime attempted to swear behind Master, and it argues that it proved a priority date of November 23, 2010 for the 638 patent. OB46-51. To swear behind a reference, an inventor must prove both that he "conceived his invention before the effective filing date of the reference and was diligent in reducing his invention to practice after that date." *Apator Miitors ApS v. Kamstrup A/S*, 887 F.3d 1293, 1295 (Fed. Cir. 2018). "Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *See*

[8] TrackTime's argument that Amazon may only rely on the provisional application for its Master invalidity case (OB46) is unsupported and incorrect. *Dynamic Drinkware* sets forth the requirements for a patent to claim priority to its provisional filing date, and Amazon satisfied those requirements. 800 F.3d at 1381-82.

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986) (internal quotation marks omitted). Conception requires corroborating evidence that is both *contemporaneous with* the time of invention and *independent of* the inventor. *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728, 743 (Fed. Cir. 2002). Reduction to practice may be "actual," *i.e.*, making the complete invention, or "constructive," *i.e.*, filing a patent application. *Hybritech*, 802 F.2d at 1376.

A jury could reasonably conclude that TrackTime failed to establish earlier conception or reduction to practice. As for conception, TrackTime relied on a hodgepodge of hand-drawn sketches, patent prosecution documents, and testimony by Mr. Evans and his business partner, Steve Maynard. OB47. But TrackTime never explained how this evidence showed a "definite and permanent idea of the complete and operative invention" of the claim; its witnesses did not map this evidence to the claim. Appx6403-05 (895:7-897:8), Appx5628-32 (232:19-236:2), Appx5768-69 (336:17-337:10). Nor could they; Dr. Schonfeld explained that none of the evidence showed all the claim elements, only a phone ("mobile computing device"). Appx6127-29 (658:12-660:25). In fact, TrackTime never identifies what it believes is the actual priority date. It also failed to corroborate an earlier conception date with independent and contemporaneous evidence. *See Juicy Whip*, 292 F.3d at 743. TrackTime identifies declarations executed years after the alleged invention, which are not contemporaneous corroboration. OB46-47, Appx5707-08 (275:7-276:14).

It also relies on Mr. Evans' testimony about the dates of his purported activities, which is not independent corroboration because it "depend[s] solely on the inventor himself." *Apator*, 887 F.3d at 1295. Mr. Maynard, for his part, said that he remembered only the "emotions" of conversations with Mr. Evans 15 years earlier. Appx5768-69 (336:17-337:10). A jury could find failure to prove earlier conception.

A jury also could reasonably conclude that Dr. Master and his SoundHound colleagues conceived LiveLyrics before Mr. Evans—at least by September 11, 2009—meaning Master remains prior art. Dr. Master explained that LiveLyrics was conceived by that date, with five teams working diligently to reduce to practice at the time. Appx6059-61 (590:15-23, 591:19-592:22), Appx6063-67 (594:8-598:11), Appx8419-20, Appx8421-24. He also explained how independent and contemporaneous documentary evidence, including emails among the project team and a self-evaluation, corroborated that work. Appx8419-20, Appx8421-24.

As for reduction to practice, TrackTime had to "demonstrate reasonable diligence toward reduction to practice from a date just prior to the other party's conception to its [own] reduction to practice." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996). That period is 16 months—from just before Master's conception in September 2009 to the first 638 patent filing on January 3, 2011.[9] Mr.

[9] TrackTime argues the period is only 33 days. OB49. This calculation relies on the filing date of the Master provisional in December 2010 and ignores the evidence that Master conceived in September 2009.

Evans testified that he emailed patent counsel during that time but provided no details about those communications. Appx5691-5700 (259:24-268:11). Courts have held that substantially shorter delays between contacting counsel and filing a patent application do not show reasonable diligence. *See, e.g.*, *In re Enhanced Sec. Rsch., LLC*, 739 F.3d 1347, 1358 (Fed. Cir. 2014) (5 months); *In re Mulder*, 716 F.2d 1542, 1545 (Fed. Cir. 1983) (3 months). The jury could conclude that TrackTime was not diligent.

The district court rejected TrackTime's evidence and arguments. It concluded that "there was substantial evidence upon which the jury could find that Master constituted prior art" and that TrackTime's evidence came "from partisan witness declarations submitted by its inventor, Mr. Evans, and prosecution attorney, Mr. Maynard, to the USPTO" years after the alleged invention. Appx15. A jury could reasonably find that Master is prior art on any of the bases above, and TrackTime provides no basis to overturn that finding.

### C. The district court correctly denied judgment as a matter of law on infringement.

TrackTime bore the burden to show that X-Ray Lyrics practices every element of the claim. *See Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). The Court "must sustain the judgment of noninfringement…if any one of the noninfringement findings...is supported by substantial evidence." *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343,

1349 (Fed. Cir. 2003). Here, there are two such grounds: the jury had substantial evidence from which to find that Amazon does not "perform a data lookup…using a synchronization index" (element 9[d]) or "seek[] on said mobile computing device multimedia...and if found, access[] multimedia at t1" (element 9[e]).

The X-Ray Lyrics feature in the Music app presents song lyrics on a mobile device screen that automatically scroll as the song plays. Appx5813-14 (381:5-9, 381:19-382:15), Appx6176 (707:3-5, 707:15-18), Appx7017, Appx7018. A user can scroll through lyrics manually and tap a particular lyric to skip to that point in the song. Appx5812-13 (380:20-381:4).

But this feature does not practice the claim. When a user plays a song, the Music app transmits a request to a server to begin streaming. Appx5813-14 (381:19-382:15). The device first receives a block of 10-20 seconds of the song and plays it. Appx5809 (377:17-23). When the block nearly runs out, the device sends a request for the next block, and so on. Appx5809-10 (377:24-378:4). The device sends a separate request for the song's lyrics, *id.*, and receives from a server a single "JSON" file with the full lyrics. Appx5811 (379:4-7). The file consists of three fields—text, start time, and end time—for each line of lyrics. Appx5810 (378:13-18), Appx5816-18 (384:8-385:4, 385:10-386:1), Appx7019-21. The mobile device uses the data from the file to populate a series of "LyricsLine objects" that each contain a single lyric line, its start time, and its end time:




Appx6092-97 (623:25-626:2, 626:10-628:2), Appx8583-84. When a user taps a lyric, the app calls a function that references its LyricsLine object to retrieve the time in the audio to skip to, not the JSON file. Appx6092-96 (623:25-625:20, 626:10-627:5), Appx6185-86 (716:8-717:19). Moreover, during playback, the device has already accessed and downloaded the lyrics and partially retrieved the song, and thus the Music app does not seek to determine whether those files are present on the device. Appx6097-98 (628:3-629:6), Appx6187 (718:20-25), Appx5809-10 (377:17-378:4).

**Element 9[d].** This element recites "performing a data lookup using [a] synchronization index, wherein said synchronization index is referenced to provide data for a time location t1 that corresponds to [a] word or range of words." The "synchronization index" contains text of the audio and the times that text occurs in a media. Appx109 (3:56-63, 4:48-51), Appx116 (17:1-38), Appx102. When a user

selects text, the device performs a "data lookup" in the synchronization index to find the corresponding time in the media. Appx109 (4:26-30). Based on the undisputed operation just described, substantial evidence showed that X-Ray Lyrics does not infringe.

TrackTime alleged that the JSON file was the "synchronization index" of the claim. Appx5544-45 (148:23-149:1), Appx6094 (625:3-10). But the device uses the JSON file only to populate the LyricsLine objects. Appx6092-97 (623:25-626:2, 626:10-628:2), Appx8583-84. When a user taps a lyric, Amazon Music references the LyricsLine object for that line of lyrics to skip to the state time to play the audio:




Appx6092-94 (623:25-625:20). The JSON file is not involved in this process. In other words, the alleged "synchronization index" is not "referenced" in any "data

lookup...to provide data for a time location t1." Appx6095-96 (626:10-627:5), Appx6185-86 (716:8-717:19). The jury could find noninfringement on this basis.

TrackTime argues that because the device creates a LyricsLine object using *data* that is originally from the JSON file, Amazon must infringe as a matter of law. OB28. But literal infringement requires a claim reading on the accused device "exactly." *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1405 (Fed. Cir. 1996). The claim expressly requires performing a data lookup *using the synchronization index*, not using other software structures that have some connection to an index at another point in the method. Appx6112 (643:17-24). In fact, other claim elements recite use of data *from* the synchronization index (9[a]: "displaying…text from a synchronization index" and 9[c]: receiving gesture information on "a word, or range of words, from said synchronization index"), whereas 9[d] recites a data lookup "using said synchronization index" itself. TrackTime cannot show infringement by tracing data through different, non-proximate instrumentalities and arguing they should be treated equivalently. *See, e.g.*, *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 954 (Fed. Cir. 2006) (holding no literal infringement because "'the abutment'… refers to the particular abutment described in the preamble of the claim, not to any structure that could conceivably serve as an abutment").

Indeed, it was undisputed that there is no "data lookup using [a] synchronization index." Amazon's experts explained that the JSON file has no role

in any "data lookup." Appx6092-94 (623:25-625:20), Appx6095-96 (626:10-627:5), Appx6185-86 (716:16-717:1, 717:9-19). And asked whether the "data lookup" or "seek" functions use the JSON file, Dr. Hernandez offered only that "Lyric lines was initially *from* the JSON file." Appx5600-01 (204:3-205:4), Appx5541 (145:6-16), Appx5572-73 (176:20-177:6), Appx5598-5601 (202:1-203:14, 204:3-205:16). At most, TrackTime identifies competing testimony that the jury was free to weigh and credit in favor of Amazon. *See MobileMedia,* 780 F.3d at 1168; *Versata*, 717 F.3d at 1263.

**Element 9[e].** Substantial evidence showed that X-Ray Lyrics does not infringe element 9[e] either, which requires "seeking on said mobile computing device multimedia...and if found, accessing multimedia at t1." X-Ray Lyrics operates on a song that is already downloaded, identified, and opened on the device. Appx6090 (621:3-24), Appx6097-98 (628:3-629:6), Appx6187-88 (718:20-719:9). As Amazon's experts explained, there is no infringement because there is no process, or even need, to "seek" on the device to determine whether multimedia is present. The jury could also find noninfringement on this basis.

Dr. Hernandez testified that there was infringement because the Music app has a function named "seek" that finds a position in a song. Appx5539 (143:15-24), Appx6531-33 (991:16-993:7). But this function does not seek multimedia on the device or determine whether it is "found" as the claim requires. Appx6083-84

(614:22-615:3), Appx8579-82. Instead, it takes an existing file "that's already opened and...jump[s] to a position within that file that you already have." Appx6097-98 (628:3-629:6), Appx6187 (718:20-25), Appx5809-10 (377:17-378:4), Appx5612 (216:17-23).

TrackTime responds that "seeking" *within* a song meets the plain meaning of the claim. OB29-30. But this element requires "*seeking...multimedia*...and *if found*, accessing multimedia..." As Dr. Houh explained, this means that "you don't know if you have [the multimedia] or not, so you have to look for the actual multimedia file itself." Appx6090 (621:3-24), Appx6097-98 (628:3-629:6), Appx6187-88 (718:20-719:9). TrackTime cannot show infringement by pointing to an already downloaded, identified, and opened song. At the very least, the jury was free to reject TrackTime's theory.[10] *Comcast IP Holdings I LLC v. Sprint Commc'ns Co.*, 850 F.3d 1302, 1311-12 (Fed. Cir. 2017) (holding unconstrued claim terms are given their plain and ordinary meaning).

---

[10] TrackTime argues the noninfringement finding was irreconcilable with its finding of anticipation by Toub. OB30-33, OB52-54. But this argument is not a challenge to the sufficiency of evidence. *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1349-54 (Fed. Cir. 2010) ("Third Circuit law recognizes that where verdicts are genuinely inconsistent and the evidence might support either of the inconsistent verdicts, the appropriate remedy is ordinarily to order an entirely new trial."). As discussed below, there is no irreconcilability and TrackTime waived its challenge in any event.

## III. THE DISTRICT COURT CORRECTLY DENIED A NEW TRIAL

The district court has broad discretion to uphold a jury verdict. It grants a new trial only if the verdict is "against the great weight of evidence and either is a miscarriage of justice or cries out to be overturned." *Vectura, Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030, 1035 (Fed. Cir. 2020); *see also Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016). TrackTime argues prejudicial error on four grounds—noninfringement and three invalidity grounds (Toub, Master anticipation/obviousness)—the jury decided against it. OB52-62.[11] Even assuming TrackTime's arguments have merit, it cannot show any error affecting the two other invalidity grounds: §101 and LiveNote. Appx5378-87; *see AbbVie Deutschland GmbH v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1304 (Fed. Cir. 2014) ("[B]ecause we substantively affirm the written description verdict, we need not decide whether the district court's [ruling] resulted in prejudicial error in the jury's obviousness verdict"). Thus, the Court need proceed no further to deny a new trial.

In any event, none of TrackTime's arguments have merit; there was no prejudicial error and thus the Court may affirm on this basis as well.

---

[11] TrackTime's argument that the weight of the evidence warranted a different outcome repeats its arguments in support of judgment as a matter of law (OB54-57) and thus fails for the same reasons.

### A. TrackTime is not entitled to a new trial based on alleged inconsistency in the verdict.

TrackTime argues that the verdict of anticipation by Toub and noninfringement is irreconcilable. OB52-53, OB30-33. It contends that because the jury found that Toub disclosed two claim elements—"performing a data lookup" and "seeking" multimedia—those elements necessarily must be present in X-Ray Lyrics. OB52-53. But that conclusion does not follow because Toub and X-Ray Lyrics work differently. Toub has a transcription index file with text and matching times to perform a "data lookup" and "seeking." Appx6131 (662:10-17), Appx6132 (663:9-18), Appx6133 (664:9-24). X-Ray Lyrics does not use a synchronization index, but separate LyricsLine objects to locate points in a song. Appx6185-87 (716:8-718:3). As the district court correctly observed, TrackTime failed to prove that Toub and X-Ray Lyrics work in the same way for these claim elements and, "[w]ithout that link, it does not follow that Amazon Music does *anything* simply because Toub does it." Appx10.

TrackTime also argues that Dr. Schonfeld applied conflicting claim constructions on noninfringement and invalidity for the "seeking" element of the claim. OB53-54. Not so. Dr. Schonfeld explained why X-Ray Lyrics does not meet the "data lookup" and "seeking" elements under the plain meaning of those terms. Appx6185-89 (716:16-720:2). For invalidity in view of Toub, he conditionally adopted TrackTime's interpretation of the "seeking" element for infringement—that

"if [the file] is on the device and they are able to display it, you have satisfied" the element. Appx6138 (669:12-23). As the Court has held, "[t]here was nothing improper about this argument," *i.e.*, conditional adoption of a patentee's interpretation for purposes of invalidity, and this does not warrant a new trial. *See 01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018). Dr. Schonfeld's argument "correctly recognized that claim terms must be 'construed the same way for both invalidity and infringement.'" *See id.* His point was that *TrackTime* could not twist the claims like a "nose of wax" to prove X-Ray Lyrics infringes without rendering the claim invalid by the same interpretation. *See id.*[12]

Moreover, TrackTime waived this argument. A party must raise a claim of inconsistency concerning a general verdict before the jury is discharged. *Function Media, LLC v. Google Inc.*, 708 F.3d 1310, 1328-30 (Fed. Cir. 2013); *Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 191 (3d Cir. 2015). That is because failure to object deprives the trial court of the opportunity to clarify the verdict by, for example, instructing the jury to conduct further deliberations. *Id.* at 191 n.18. The jury returned a general verdict on noninfringement and invalidity because the verdict form posed questions on ultimate

[12] Even if Dr. Schonfeld's testimony for the "seeking" element of Toub was inconsistent, there is still no necessary inconsistency in the verdict. The jury could still have found anticipation by Toub and noninfringement by X-Ray Lyrics based on the "data lookup" element.

legal issues rather than underlying factual questions. Appx5379-5382; *Function Media*, 708 F.3d at 1328-30. TrackTime did not object before the jury's discharge and thus waived its inconsistency challenge. Appx6488-6507 (948:20-967:4). TrackTime's brief is silent on this issue.[13]

**B. TrackTime is not entitled to a new trial based on the district court's evidentiary rulings.**

Nor is TrackTime entitled to a new trial based on evidentiary rulings. TrackTime must show an abuse of discretion in the ruling. *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 225 (3d Cir. 2008); *see also Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1379 (Fed. Cir. 2010) (applying regional circuit law). An abuse occurs only where the ruling is "arbitrary, fanciful, or clearly unreasonable" such that "no reasonable person would adopt the district court's view." *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010). TrackTime must also demonstrate entitlement to a new trial, specifically that such error was prejudicial and affected its substantial rights. *Goodman v. Pennsylvania Tpk. Comm'n*, 293 F.3d 655, 667 (3d Cir. 2002); *see also* Fed. R. Civ. P. 61 (courts "must"

[13] TrackTime's authorities do not justify a new trial. *See* OB52. In *Pediatrix Screening, Inc., v. TeleChem Int'l, Inc.*, 602 F.3d 541 (3d Cir. 2010), the court ordered a new trial because the district court had expressly found one warranted but for an (erroneous) waiver ruling. *Xpertuniverse, Inc. v. Cisco Sys., Inc.*, 2013 WL 6118447 (D. Del. Nov. 20, 2013) contains dicta that a "facially inconsistent" verdict may warrant a new trial, but neither party raised such an issue.

disregard errors that do not affect a party's "substantial rights").[14] TrackTime cannot establish either element for the rulings it challenges.

**1. TrackTime is not entitled to a new trial based on exclusion of the draft patent application.**

TrackTime argues that exclusion of an unwitnessed and undated draft patent application warrants a new trial. OB56-60. It offered that application to antedate Master—specifically, to corroborate Mr. Evans' testimony that he conceived before Master. Appx5409 (13:11-19), Appx6302-03 (794:20-795:7), Appx9131-78. But such evidence must be both *contemporaneous with* the time of invention and *independent of* the inventor. *Juicy Whip*, 292 F.3d 728 at 743; *Apator*, 887 F.3d at 1295.

TrackTime established neither. It attempted to have Mr. Evans himself testify to the application's date (Appx6296-6300), but such testimony is necessarily not "independent." Nor is it contemporaneous with an alleged conception date over a decade before trial. Indeed, it is this type of self-serving testimony that led to the corroboration requirement in the first place. *See Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.*, 143 U.S. 275, 284 (1892).

[14] TrackTime's cited authority, *GN Netcom, Inc. v. Planatronics, Inc.*, 930 F.3d 76 (3d Cir. 2019), does not vary these standards and requires an abuse of discretion that was not harmless. *Id.* at 88-89.

TrackTime sought also to establish the application's date through testimony about metadata in the document. Appx5514-19 (118:18-123:14), Appx6296-6303 (788:12-795:7). But that metadata was nonsense and thus not reliable evidence. It purported to show a "Created" date of November 22, 2010, yet it was "Last Printed" on October 22, 2010—a full month before it was created. Appx5514-19 (118:18-123:14). The metadata also stated that the 25,345-word document had a "Total Editing Time" of 49 minutes, for a typing speed of 9 words per second. *Id.* The district court ruled that this information would confuse the jury and that allowing TrackTime to use it would prejudice Amazon. Appx22-24, Appx6300-03 (792:23-794:9, 794:20-795:7), Appx5514-19 (118:18-123:7).

The district court's discretion is "especially broad[] in the context of Rule 403" and "rarely disturb[ed]" when the court provides a rational explanation for excluding evidence. *United States v. DeMuro*, 677 F.3d 550, 559 (3d Cir. 2012); *United States v. Kaszuba*, 823 F. App'x 77, 79 (3d Cir. 2020). That is the case here. The district court's ruling makes sense given the contradictory and implausible metadata, and recognition that such metadata "can be easily modified, even accidentally." *EMC Corp. v. Pure Storage, Inc.*, 204 F. Supp. 3d 749, 760-63 (D. Del. 2016); *see also Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 760-761 (D. Del. 2010).

TrackTime argues that the district court should have admitted the application under a "rule of reason." OB57-60. The "rule of reason" encourages consideration of "all pertinent evidence" of corroboration, "so that a sound determination of the credibility of the inventor's story may be reached." *Coleman v. Dines*, 754 F.2d 353, 360 (Fed. Cir. 1985). But that rule is not an end-run around the rules of evidence. Specifically, it "does not dispense with the requirement for some evidence of independent corroboration." *Id.* Mr. Evans cannot corroborate his conception through his own testimony. *See Woodland Tr. v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1369 (Fed. Cir. 1998). Nor can the draft patent application, as it has an unreliable date that TrackTime sought to establish *using Mr. Evans' testimony*. *See Apator*, 887 F.3d at 1295.[15]

TrackTime argues that it could have overcome this issue by having Dr. Hernandez explain the inconsistent metadata. OB57-60. It asserts he could testify that metadata errors are a "common issue," and encourage the jury to date the patent application notwithstanding its incoherent metadata. But TrackTime never disclosed any such opinions in an expert report. Appx6300-01 (792:23-793:25), Appx6303 (795:18-20). Instead, its claims about a "known issue" concerning metadata in

[15] While TrackTime argues that the district court barred Mr. Evans' testimony, this is inaccurate. *See* OB60. TrackTime chose not to call him in rebuttal after the district court excluded the application. Appx6297 (789:2-15), Appx24.

Windows were attorney argument. Appx6300-01 (792:21-793:7). The district court did not err, let alone abuse its discretion, by excluding undisclosed expert opinion. *See Rembrandt Vision Techs., LP v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1382 (Fed. Cir. 2013).[16]

TrackTime also cannot show prejudice. As explained above, excluding the application had no impact on the verdict of noninfringement, anticipation by Toub and LiveNote, and conventionality. The application, even if admitted, also was legally insufficient to establish a conception date because it lacks independent corroboration. Moreover, as the district court noted, TrackTime had introduced other evidence of its purported earlier conception that the jury rejected, and TrackTime makes no argument about why admitting the application would be any different. Appx24-25. Finally, exclusion of the application would be relevant to Master only if the jury concluded that Master is not entitled to an earlier priority date than its filing date in December 2010. But as explained above, substantial evidence supported a finding that Master has a priority date as early as September 2009—long

[16] TrackTime's authorities do not show that the unreliable metadata was, at most, fodder for cross-examination. OB57-58. *Almirall LLC v. Taro Pharm. Indus. Ltd.* nowhere suggests that experts may present new opinions at trial simply because they can be cross-examined. 2019 WL 316742, at *4-5 (D. Del. Jan. 24, 2019). *Haskell v. Colebourne* assessed only whether a draft patent application reviewed by an attorney is evidence of conception in an administrative proceeding, not the admissibility of a patent application with unreliable metadata and no independent corroboration at trial. 671 F.2d 1362, 1365-66 (C.C.P.A. 1982).

before the purported date of the application. The district court's ruling did not prejudice the outcome of the trial.

### 2. TrackTime is not entitled to a new trial based on exclusion of an unasserted Amazon patent.

TrackTime also argues that exclusion of an unrelated Amazon patent warrants a new trial. OB60-62. TrackTime intended to cross-examine Dr. Schonfeld about statements in that patent to argue its own patent claims are unconventional. Appx5117-26 (32:13-41:3). The district court deemed this argument "so tangential" that it would risk juror confusion and unfair prejudice. Appx25, Appx5124-27 (39:16-42:11).

The district court did not abuse its discretion. The jury had to evaluate whether a skilled artisan would view the ordered combination of claim elements in the 638 patent as conventional at the time of invention. Appx5383. Whether an unrelated Amazon patent included similar sounding language is irrelevant. Allowing TrackTime to introduce Amazon's patent would have led to a mini-trial on collateral issues that is the very definition of prejudice, confusion, and waste of time under Rule 403. *See Solvay, S.A. v. Honeywell Int'l Inc.*, 886 F. Supp. 2d 396, 410 (D. Del. 2012), *aff'd*, 742 F.3d 998 (Fed. Cir. 2014) (no error in excluding unrelated patent to avoid confusion and unnecessary detours into satellite issues); *see also Morsa v. Facebook, Inc.*, 77 F. Supp. 3d 1007, 1014 (C.D. Cal. 2014), *aff'd*, 622 F. App'x 915 (Fed. Cir. 2015) ("[A]llegedly contrary positions [defendant] has taken before the

Patent Office with respect to patents not at issue in this case…do not permit this Court to confer patent eligibility on otherwise ineligible subject matter.”). Excluding this purported “evidence” thus follows a line of similar and well-reasoned decisions, making the district court’s decision not “arbitrary.” *See id.*; *Benne v. Int’l Bus. Machines Corp.*, 87 F.3d 419, 428 (10th Cir. 1996).

TrackTime also failed to explain how exclusion prejudiced the trial. It states its expert would have testified that Amazon’s patent has the “same inventive concept” as the 638 patent. OB61. But Dr. Hernandez had opined that Amazon’s patent supports the unconventionality of *individual elements* of the patent claims, not any *ordered combination*. Appx4947-49, Appx5383. By the time of trial, TrackTime conceded that the individual claim elements did not provide an inventive concept, leaving only an ordered combination theory. Appx5725-31 (293:7-299:25), Appx6391 (883:13-21). Thus, even from TrackTime’s perspective Amazon’s patent was not relevant to any theory presented at trial so there can be no prejudice. Finally, the judgments of noninfringement and invalidity would stand regardless of whether exclusion of this evidence that relates, at most, to the §101 conventionality issue was proper.

## IV. THE DISTRICT COURT CORRECTLY HELD THE 978 PATENT CLAIMS INVALID AS INDEFINITE

The district court correctly invalidated claims 1 and 2 of the 978 patent for indefiniteness. Section 112(6) limits functional claiming—the practice of claiming

a result without disclosing how to accomplish it. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015).[17] It provides for claiming an invention by reciting its function but limits the claim to the corresponding structure in the patent. *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1097 (Fed. Cir. 2014); *Williamson*, 792 F.3d at 1350. If the patent fails to disclose such structure, the claim is indefinite. *Id.* at 1351-52.

TrackTime fails to identify error in the court's ruling. Both claims are subject to the statute. They recite "executable program code" configured to perform a function, either to "facilitate annotation" or to "synchronously play…multimedia." But the claimed "code" is an empty black box—an instruction for a skilled artisan to invent an actual solution. The claims recite no structure to accomplish the functions, Appx52-55, and neither does the specification. Appx55-58. Thus, the claims are indefinite.

### A. The patent employs functional claiming and is thus subject to §112(6).

A patentee invokes §112(6) with claims that recite a "means for" performing a function. But use of those words is not the touchstone of functional claiming, nor can a patentee rest solely on the "presumption" that a claim does not invoke §112(6).

[17] The text of §112(6) is identical to the text of current §112(f). Amazon refers to the former because the 978 patent claims priority to an application filed before the enactment of §112(f).

"[T]he essential inquiry" is "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson*, 792 F.3d at 1348. It thus does not matter whether the patentee claims functions performed by a "module," *id.* at 1350-51, a "device," *Robert Bosch*, 769 F.3d at 1100-01, a "mechanism," *Mass. Inst. of Tech. & Elecs. For Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1353-54 (Fed. Cir. 2006), a "unit," *Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*, 899 F.3d 1291, 1298-1302 (Fed. Cir. 2018), or "logic." *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1374-75 (Fed. Cir. 2020). If the claim recites a black box defined only by the function it performs—and not a specific structure—§112(6) applies. *Robert Bosch*, 769 F.3d at 1097.

The 978 patent employs functional claiming. Both claims recite "executable program code" that must be "configured to" perform some function. In claim 1, the code must "facilitate annotation of a portion" of the synchronization index. In claim 2, the code must "synchronously play…multimedia with [a] synchronization index." Neither claim describes what software instructions comprise the "executable program code," or how those instructions achieve the claimed functions. Appx52-55, Appx57; *see also* Appx1477-89. Indeed, the phrase "configured to" makes clear that *something else*—some algorithm or programming—must be done *to* the "executable program code" to make it work. During prosecution, the applicant

argued multiple times that the annotation function, for example, is different from the "limited" functionality that existed in conventional software. *See, e.g.*, Appx1598, Appx1614 (distinguishing claims from cited art). The recited "code" refers not to off-the-shelf software known in the art, but to a black box to capture inventive work by others.

The Court's decision in *Robert Bosch* is analogous. The claims there recited a "program recognition device" to determine the program version of a vehicle's control unit, and a "program loading device" to update the program to the latest version. 769 F.3d at 1096. The Court ruled these limitations subject to §112(6). It held the inquiry is "whether the claim language names *particular structures*" that accomplish the specified functions rather than a "general category of *whatever* may perform" those functions. *Id.* at 1099. Because any device "comprising hardware, software, or both" could perform the claimed functions, the claims fell into the "general category" and §112(6) applied. *Id.* at 1100-01; *see also Egenera*, 972 F.3d at 1374 ("the question is not whether 'logic' is utterly devoid of structure but whether the claim term recites sufficient structure to perform the claimed functions").

The phrase "executable program code" is no different from the "devices" in *Robert Bosch*, the "modules" in *Williamson*, or the "logic" in *Egenera*. These terms refer to generic software without *sufficient* structure required to avoid the statute. *See Robert Bosch*, 769 F.3d at 1101. Because "executable program code" is a black

box that must be configured in some unspecified way to achieve the functions of "annotation" and "synchronous[] play," §112(6) applies.

TrackTime's counterarguments fail. TrackTime argues that §112(6) does not apply because neither claim recites the term "means" or similar words. OB19. But "merely because an element does not include the word 'means' does not automatically prevent that element from being construed" under §112(6). *Williamson*, 792 F.3d at 1348. The claim, as understood by a skilled artisan, must connote a "sufficiently definite" structure. *Id.* Here, it does not. TrackTime fails to identify any structure, let alone sufficient structure, in the claims. OB18-20.

TrackTime next argues that the district court ignored its expert's testimony that the limitations refer to "well-understood" code. OB20-21. This argument fails twice over. First, district courts need not accept an expert's "conclusory statements" concerning indefiniteness. *See Saso Golf, Inc. v. Nike, Inc.*, 843 F. App'x 291, 294 (Fed. Cir. 2021). An expert's say-so that a skilled artisan would understand a functional term as connoting structure, or simply repeating the claimed functions, is "conclusory and unhelpful" and entitled to no weight. *See id.*; *see also Diebold*, 899 F.3d at 1301-02; *Robert Bosch*, 769 F.3d at 1101.

Dr. Agrawala offered just this type of testimony. His declaration lists dictionary definitions that define "executable program" and "program" as computer code, and cites Amazon's invalidity contentions as a purported "admission" that the

claimed functionality was known. Appx1635-39, Appx1641-44. He also quotes the specification, cites figures, and concludes that an "annotation and edit logic 6-12" performs the claimed annotation function (Appx1639), and a "video, display, and playlist logic 6-13" performs the claimed synchronous playing function. Appx1644-45. But he never explains how these "logics" connote structure. The cited "logic"—another word for code—lacks any algorithm nor any disclosure of *how* it could be configured to perform the functions. Appx1478, Appx1482-83. These portions of the specification merely restate the functions, assert that they are possible (without technical details), or describe the functions without a way to implement them. Appx1478-89. As for the cited figures, Figure 6 shows literal boxes labeled with the functions: for example, "annotation edit functions" or "video/display/playlist functions." The remaining figures (Figs. 7, 8, 16, 18, 20-31) depict a user interface that Mr. Evans created by stitching together pieces of the prior art. Appx79, Appx81, Appx86-94. These figures do not provide structure or an algorithm for the "executable program code" that performs the claimed functions. Nor did Dr. Agrawala provide any basis to conclude that a skilled artisan would link "executable program code" to these citations and figures. His conclusory testimony was entitled to no weight.

Second, the district court did not ignore this testimony. It "reviewed the…declarations of experts submitted for each side," heard argument at the

*Markman* hearing, and cited Dr. Agrawala's declaration before ruling against TrackTime. Appx48, Appx53-54; *see also* Appx1818-35, Appx1838. What TrackTime means is that the court did not *accept* Dr. Agrawala's testimony. But the court did not have to do so. It had broad discretion in conducting claim construction and whether to receive expert testimony. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) ("The court may, in its discretion, receive extrinsic evidence[.]"); *see also Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984) ("A trial judge has sole discretion to decide whether or not he needs, or even just desires, an expert's assistance to understand a patent.").

To the extent that the district court found facts—such as a skilled artisan not understanding TrackTime's dictionaries or specification cites to supply the required structure to avoid indefiniteness (Appx53-54, Appx57-58)—the Court reviews those factual findings for clear error. *Teva*, 574 U.S. at 321-22; *see also Saso Golf*, 843 F. App'x 294 (no clear error in accepting defendant's expert testimony over plaintiff's);

Appx1479-80, Appx1483-88, Appx1818-35, Appx1838. TrackTime has not shown or even argued clear error.[18]

TrackTime's cited cases do not remove the claims from §112(6). *See* OB19-20. In *WSOU Invs. LLC v. Google LLC*, the Court analyzed the phrase "at least one memory including computer program code" to carry out functions, including detecting an application, receiving radio signals, and controlling operation of the application. 2023 WL 6889033, at *1-4 (Fed. Cir. Oct. 19, 2023). The Court held that a skilled artisan would understand the code as "stored in a memory structure and running on the processor," *id.* at *4, and that the specification described such programming "in commercially-available and well-known formats." *Id.* at *5. In *Zeroclick, LLC v. Apple Inc.*, the Court held that the phrase "user interface code being configured to detect one or more locations touched…on the screen…and determine therefrom a selected operation" did not invoke §112(6). 891 F.3d 1003, 1006-08 (Fed. Cir. 2018). It did so not because the claim recited "code," but rather because the specification emphasized that the "user interface code" was an "existing program" and referred to known "graphical user interface programs or code, existing

[18] To the extent TrackTime suggests Amazon's invalidity theories for the 638 patent under §§101, 102, and 103 conflict with a finding of indefiniteness for the 978 patent, TrackTime is wrong. "The indefiniteness inquiry is concerned with whether the bounds of the invention are sufficiently demarcated, not with whether one of ordinary skill in the art may find a way to practice the invention." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519 (Fed. Cir. 2012); Appx53.

in prior art at the time of the inventions." *Id.* at 1006-09. And in *Dyfan, LLC v. Target Corp.*, the Court held that "code" on a mobile device that received messages and output visual information did not invoke §112(6). 28 F.4th 1360, 1367-68 (Fed. Cir. 2022). It reached this conclusion based on unrebutted expert testimony (unlike here) that a skilled artisan would understand the claimed "code" and its functions "could be implemented using 'off-the-shelf' code or applications." *Id.*

None of these cases supports TrackTime. Each case shuns "categorical rules" about §112(6), and "look[s] beyond the initial 'code' or 'application' term" to how a skilled artisan would have understood the term. *WSOU Invs.*, 2023 WL 6889033, at *3; *Zeroclick*, 891 F.3d at 1007; *Dyfan*, 28 F.4th at 1368. Their holdings each rest on a determination that the patentee invoked structures present in, and clearly linked to, existing off-the-shelf software. *Id.* TrackTime has not done so here. And it cannot, because it disclaimed such off-the-shelf software during prosecution to obtain the patent. *E.g.*, Appx1598, Appx1614. TrackTime fails to articulate how "executable program code" connotes sufficiently definite structure or show error in the district court's analysis.

### B. The patent fails under §112(6) because the specification recites no structure or algorithm for the claimed functions.

To comply with §112(6), the specification must disclose a corresponding algorithm for the functions recited in the claims. *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1337 (Fed. Cir. 2014). The specification must also "clearly link[] or

associate[] that [algorithm] to the function recited in the claim." *Williamson*, 792 F.3d at 1352. If a skilled artisan could not "recognize the structure in the specification and associate it with the corresponding function," then the term is indefinite. *Robert Bosch*, 769 F.3d at 1097-98.

The specification discloses no algorithm for the recited functions. As explained above, the specification at best mentions existing software, refers to generic "logic" terms, and shows black-box diagrams or stitched-together user interface. There is no algorithm, code, or conventional "structure" to carry out the functions. The district court pressed TrackTime at *Markman* to identify the corresponding structure in the specification, but its counsel could not. Appx48, Appx55-58, Appx1818, Appx1828, Appx1831. When asked whether there is "anything in the patent that tells you how [annotation is] done," TrackTime responded "annotation and edit logic 6-12" combined with Dr. Agrawala's conclusory testimony. Appx1831-32. This undefined "logic" provides no more structure than the phrase "executable program code" itself. Appx1478, Appx1482-83. The district court correctly concluded there was no structure or algorithm.

Without any structure linked to the claimed functions, TrackTime pivots to arguing that the law requires no linkage at all. OB23-24. But decades of precedent hold that, to avoid indefiniteness, the specification must "*clearly link[] or associate[]* th[e] structure to the function recited in the claim." *Williamson*, 792 F.3d

at 1352; *see also Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012) (same); *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997) (same). Appx55-58. TrackTime is also wrong that the district court held it to a "higher burden" when searching for a linkage between the claimed functions and software in the specification. That is simply what the law requires. *Williamson*, 792 F.3d at 1352. To the extent TrackTime points to Dr. Agrawala's declaration as linking the claimed functions to purportedly "corresponding structures" in the specification (OB24), "[t]he testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification." *Williamson*, 792 F.3d at 1354.

The district court correctly held that claims 1 and 2 of the 978 patent invoke §112(6) and fail to disclose sufficient structure corresponding to the claimed functions. Those claims therefore are indefinite.

## CONCLUSION

For all these reasons, the Court should affirm.

Respectfully submitted,

March 28, 2025

FENWICK & WEST LLP

By: */s/ J. David Hadden*
J. David Hadden

*Counsel for Defendants-Appellees Amazon.com Services LLC and Audible, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Circuit Rule 32(a). This brief contains 13,994 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman.

March 28, 2025

FENWICK & WEST LLP

By: *<u>/s/ J. David Hadden</u>*
J. David Hadden

*Counsel for Defendants-Appellees Amazon.com Services LLC and Audible, Inc.*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a complete copy of **RESPONSE BRIEF OF DEFENDANTS-APPELLEES AMAZON.COM SERVICES LLC AND AUDIBLE, INC.** was served on the attorneys of record via electronic mail or CM/ECF delivery on March 28, 2025.

March 28, 2025

FENWICK & WEST LLP

By: */s/ J. David Hadden*
J. David Hadden

*Counsel for Defendants-Appellees Amazon.com Services LLC and Audible, Inc.*