**2024-1102**

# United States Court of Appeals for the Federal Circuit

TRACKTIME, LLC,

*Plaintiff-Appellant,*

– v. –

AMAZON.COM SERVICES LLC, AUDIBLE, INC.,

*Defendants-Appellees.*

*On Appeal from the United States District Court for the District of Delaware in No. 1:18-cv-01518-MN (Hon. Maryellen Noreika, Judge)*

## APPELLANT'S REPLY BRIEF

ROBERT GREENSPOON
WILLIAM W. FLACHSBART
DUNLAP BENNETT & LUDWIG PLLC
*Attorneys for Plaintiff-Appellant*
333 North Michigan Avenue, Suite 2700
Chicago, Illinois 60601
(312) 551-9500
rgreenspoon@dbllawyers.com
wflachsbart@dbllawyers.com

April 16, 2025

COUNSEL PRESS (800) 4-APPEAL • (624583)

---

9. A method for a multimedia seek sequence using a synchronization index and a mobile computing device comprising the steps:

displaying on a mobile computing device text from a synchronization index, wherein said synchronization index comprises respective times within multimedia corresponding to a word or range of words and wherein said text is displayed other than as a web page;

wherein said mobile computing device comprises a viewing screen and a touch-sensitive input interface;

receiving information indicating a user's selected mobile computing device touch-sensitive input interface gesture performed on a portion of said viewing screen corresponding to a word, or range of words, from said synchronization index, wherein said gesture is recognized by said touch-sensitive input interface;

performing a data lookup using said synchronization index, wherein said synchronization index is referenced to provide data for a time location t1 that corresponds to said word or range of words selected by the recognized gesture; and

seeking on said mobile computing device multimedia corresponding to said synchronization index, and if found, accessing multimedia at t1.

---

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

INTRODUCTORY STATEMENT .......... 1

ARGUMENT .......... 2

I. The ’978 Patent is Not Invalid as Indefinite .......... 2

II. JMOL Denial for the ’638 Patent Was Erroneous .......... 7

A. Amazon Music Infringes Claim 9 of the ’638 Patent .......... 7

B. Claim 9 is Patent Eligible .......... 9

C. Claim 9 Is Not Anticipated or Obvious .......... 14

1. Toub Does Not Anticipate .......... 14

2. LiveNote Does Not Anticipate .......... 17

3. Master Does Not Anticipate or Render Obvious .......... 18

III. A New Trial is Warranted On the ’638 Patent .......... 22

A. Clear Weight of the Evidence Warrants a New Trial .......... 22

B. The Inconsistent Verdict Warrants a New Trial. .......... 23

C. Exclusion of TrackTime’s Draft Patent Application Warrants a New Trial .......... 26

D. Exclusion of Amazon’s ’658 Patent Warrants a New Trial .......... 29

CONCLUSION .......... 32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*01 Communique Lab., Inc. v. Citrix Sys.*,
889 F.3d 735 (Fed. Cir. 2018).............................................................. 24, 25

*Accord Burroughs Wellcome Co. v. Barr Labs., Inc.*,
40 F.3d 1223 (Fed. Cir. 1994)……………………..……………………28

*Apator Miitors ApS v. Kamstrup A/S*,
887 F.3d 1293 (Fed. Cir. 2018)....................................................... 21, 27, 28

*Berkheimer v. Hewlett-Packard Co.*,
881 F.3d 1360 (Fed. Cir. 2018)……………………………………….....14

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*,
661 F.3d 629 (Fed. Cir. 2011)......................................................................16

*Burroughs Wellcome Co. v. Barr Labs., Inc.*,
40 F.3d 1223 (Fed. Cir. 1994)......................................................................28

*Callaway Golf Co. v. Acushnet Co.*,
576 F.3d 1331 (Fed. Cir. 2009)............................................................ 23, 25

*Contour IP Holding LLC v. GoPro, Inc.*,
113 F.4th 1373 (Fed. Cir. 2024)..................................................................10

*Contra Mosaic Brands, Inc. v. Ridge Wallet LLC*,
55 F.4th 1354 (Fed. Cir. 2022)……………………..……………………27

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
880 F.3d 1356 (Fed. Cir. 2018)....................................................................11

*Cosmokey Sols. GMBH & Co. KG v. Duo Sec. LLC*,
15 F.4th 1091 (Fed. Cir. 2021)…………………………….……………12

*Data Engine Technologies LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018)......................................................................11

*Dyfan, LLC v. Target Corp.*,
28 F.4th 1360 (Fed. Cir. 2022)......................................................... 1, 2, 4, 6

*Egenera, Inc. v. Cisco Sys.*,
972 F.3d 1367 (Fed. Cir. 2020)..................................................................3, 4

*Function Media, L.L.C. v. Google Inc.*,
708 F.3d 1310 (Fed. Cir. 2013) .......... 25, 26

*GMBH & Co. KG v. Duo Sec. LLC*,
15 F.4th 1091 (Fed. Cir. 2021) .......... 12

*GN Netcom, Inc. v. Plantronics, Inc.*,
930 F.3d 76 (3d Cir. 2019) .......... 30

*Haskell v. Colebourne*,
671 F.2d 1362 (C.C.P.A. 1982) .......... 27, 28

*In re Riggs*,
_ F.4th _, 2025 U.S. App. LEXIS 6761 (Fed. Cir. Mar. 24, 2025) .......... 21

*Juicy Whip v. Orange Bang*,
292 F.3d 728 (Fed. Cir. 2002) .......... 21, 27, 29

*MobileMedia Ideas LLC v. Apple, Inc.*,
780 F.3d 1159 (Fed. Cir. 2015) .......... 15, 16

*Morsa v. Facebook, Inc.*,
77 F. Supp. 3d 1007 (C.D. Cal. 2014), *aff'd*, 622 F. App'x 915 (Fed. Cir. 2015) .......... 30

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
55 F.4th 1354 (Fed. Cir. 2022) .......... 27

*Mycogen Plant Sci., Inc. v. Monsanto Co.*,
243 F.3d 1316 (Fed. Cir. 2001) .......... 8

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
545 F.3d 1359 (Fed. Cir. 2009) .......... 15, 17

*Plexxikon Inc. v. Novartis Pharms. Corp.*,
631 F. Supp. 3d 823 (N.D. Cal. 2022) .......... 28

*Robert Bosch, LLC v. Snap-On Inc.*,
769 F.3d 1094 (Fed. Cir. 2014) .......... 3

*Solvay, S.A. v. Honeywell Int'l, Inc.*,
886 F. Supp. 2d 396 (D. Del. 2012), *aff'd*, 742 F.3d 998 (Fed. Cir. 2014) .......... 30

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016) .......... 13

*TQ Delta, LLC v. 2Wire, Inc.*,
No. 1:13-cv-01835-RGA, 2019 U.S. Dist. LEXIS 143947
(D. Del. Aug. 23, 2019) ....................23

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)....................9

*United States v. Caraway*,
534 F.3d 1290 (10th Cir. 2008)....................30

*United States v. Carmichael*,
No. 22-1679, 2023 U.S. App. LEXIS 7812 (3d Cir. Apr. 3, 2023) ..............23

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012).................... 14, 18

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015)....................3

*Woodland Tr. v. Flowertree Nursery, Inc.*,
148 F.3d 1368 (Fed. Cir. 1998)....................28

*WSOU Invs. LLC v. Google LLC*,
Nos. 22-1063, 22-1065, 2023 U.S. App. LEXIS 27763
(Fed. Cir. Oct. 19, 2023).................... 1, 2, 4

*Zeroclick, LLC v. Apple Inc.*,
891 F.3d 1003 (Fed. Cir. 2018).................... 1, 2, 4

**Statutes & Other Authorities:**

Fed. R. Civ. P. 49(a) ....................25

## INTRODUCTORY STATEMENT

Amazon only defends the district court's judgment by misapplying caselaw, citing the record for propositions it does not support, and invoking double standards.

**The '978 Patent**

The district court erred to invalidate U.S. Patent No. 8,862,978, at least because *Dyfan*, *WSOU*, and *Zeroclick* show that the means-plus-function statute does not apply to its "code" terms. TrackTime's opening brief showed that these authorities immunize software "code" limitations from means-plus-function treatment (and indefiniteness) when a claim recites that such code performs a named operation, especially where the code is known within off-the-shelf products. (Blue Br. 22-23). Amazon responds that "[e]ach case shuns 'categorical rules.'" (Red Br. 61). But only *WSOU* uses the phrase "categorical rules," and this is limited to its discussion of how "processor" (not "code") limitations receive case-by-case treatment. *WSOU Invs. LLC v. Google LLC*, Nos. 22-1063, 22-1065, 2023 U.S. App. LEXIS 27763, *8 (Fed. Cir. Oct. 19, 2023) (nonprecedential).

**The '638 Patent**

U.S. Patent No. 8,856,638 is valid and infringed. Amazon chose not to refute TrackTime's points of error over the district court's denial of a new trial on clear-weight-of-the-evidence grounds. (*Compare* Blue Br. 55 *with* Red Br. 44). Instead, Amazon misstates that TrackTime did not address all parts of the verdict. (Red Br.

44, naming §101 and LiveNote as unaddressed in the Blue Brief). This was incorrect. (Blue Br. 55, explaining clear weight of the evidence went against all parts of the verdict, including §101 and LiveNote).

Where it does join issue, Amazon's brief does not rehabilitate remaining district court errors, particularly in denying JMOL of infringement and validity for the '638 Patent. Each Amazon attempt to rebut TrackTime's points of error fails. TrackTime explains below why no substantial evidence existed for the non-infringement and invalidity verdict.

Finally, Amazon cannot rehabilitate the district court's wrong evidentiary exclusions. Mr. Evans' November 2010 patent application and Amazon's 2014 patenting statements touting tap-to-jump as unconventional were relevant, not unfairly prejudicial, and admissible. Improper exclusion tainted the verdict and merits a new trial. Amazon's defense of such errors fails scrutiny.

# ARGUMENT

## I. The '978 Patent is Not Invalid as Indefinite

The district court erred in finding the "executable program code" limitations (for "annotation" and "synchronous[] play" in claims 1 and 2, respectively) are in means-plus-function format subject to §112 ¶6. (Blue Br. 20-21). This Court's precedent in *Dyfan*, *WSOU*, and *Zeroclick* makes clear that "code" configured to perform a function is not drafted in means-plus-function-format where well-known

code performed that function. (Blue Br. 19-20). The district court further erred in ignoring unrebutted testimony from TrackTime's expert, Dr. Agrawala, about the well-known code behind the "executable program code" limitations. (Blue Br. 20, 22-23). Even if subject to §112 ¶6, the district court erred in ignoring the corresponding structure disclosed in the specification. (Blue Br. 21, 24).

Amazon's response asserts that the "executable program code" limitations are each a "black box" devoid of structure. (Red Br. 54). Amazon relies on attorney argument, analogizing the "executable program code" limitations of the '978 Patent to the limitations at issue in *Robert Bosch*, *Williamson*, and *Egenera*. (Red Br. 55-57). These cases are inapposite. Amazon wrongly states that the "devices" of *Robert Bosch*, the "modules" of *Williamson*, and the "logic" of *Egenera* refer to "generic ***software***" lacking sufficient structure in its attempt to relate these terms to the "executable program code" limitations of the '978 Patent. (*See* Red Br. 56, emphasis added). This Court instead held that the "devices" of *Robert Bosch* lacked sufficient structure because they referred to "any type of device that comprises ***hardware***, software, or both." *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1100 (Fed. Cir. 2014) (with emphasis). Similarly, this Court held that the "modules" of *Williamson* lacked sufficient structure because they referred to "a generic description for software or ***hardware***." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Cir. 2015) (emphasis added). And this Court held that the "logic" of *Egenera*

lacked sufficient structure because it referred to "software, firmware, or ***circuitry***." *Egenera, Inc. v. Cisco Sys.*, 972 F.3d 1367, 1374 (Fed. Cir. 2020) (emphasis added).

TrackTime's cited cases of *Dyfan*, *WSOU*, and *Zeroclick* expressly relate to software code and control the outcome here. These cases confirm that software "code" limitations are immunized from means-plus-function treatment (and indefiniteness) when a claim recites that such code performs a named operation, especially where the code is known within off-the-shelf products. (Blue Br. 22-23, discussing *WSOU*, 2023 U.S. App. LEXIS 27763 at *8; *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1365 (Fed. Cir. 2022); *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1006-07 (Fed. Cir. 2018)). Amazon attempts to distinguish these cases by asserting that "[e]ach case shuns 'categorical rules.'" (Red Br. 61). But only *WSOU* uses the phrase "categorical rules," and does so in its discussion of how "processor" (not "code") claim limitations always receive case-by-case treatment. *WSOU*, 2023 U.S. App. LEXIS 27763, *8. Additionally, this Court respectively decided *WSOU* and *Dyfan* in October 2023 and May 2022—after the district court's July 7, 2021 indefiniteness ruling. (Appx44).

Amazon further attempts to distinguish *Dyfan* by arguing that TrackTime's caselaw relied on "unrebutted expert testimony (***unlike here***)" about pre-existence of off-the-shelf variants of the claim limitation (Red Br. 60, emphasis added). But Amazon never cites any expert disagreement. Testimony from TrackTime's expert

Dr. Agrawala ***was*** "unrebutted," that code for annotation pre-existed in LiveNote, SyncPlayer, Microsoft Synchronized Accessible Media Exchange, RealLegal Binder and Summation. (*See* Blue Br. 23, Appx1637-1638). Indeed, Dr. Agrawala showed that Amazon admitted in its invalidity contentions that LiveNote had such code. (Appx1636, Appx1676-1696). This admission contradicts its statement to this Court.

In any event, the '978 Patent describes known software that performed the annotation and synchronous play functions. (Appx470, "[a] variety of software tools" for annotation pre-existed; *see also* Appx468, noting that "The attorney uses software tools for . . . annotating the ASCII testimony or text data."). The '978 Patent further describes closed captioning and karaoke software that caused synchronous play between text and video. (Appx472-473). These operations (at least as individual claim limitations) were known in the art. Amazon mistakenly asserts that TrackTime "disclaimed [] off-the-shelf software during prosecution to obtain the patent." (Red Br. 61, citing Appx1598, Appx1614). But Amazon's citations instead show the applicant distinguishing publication references. Such prosecution statements did not distinguish off-the-shelf products as such, but named gaps in two specific prior art publications.

Since Amazon points to no rebutting testimony from its own expert, Amazon instead argues that Dr. Agrawala's testimony is conclusory and that the district court "did not accept" his testimony. (*See* Red. Br. 57-59). But the district court did not

find that Dr. Agrawala's testimony was conclusory. (Appx44-58). Nor did the district court explain that it rejected his testimony. (Appx44-58). The district court only referred to Dr. Agrawala's testimony in "making the decisions [the Court was] about to state" regarding the unrelated construction of the term "multimedia" in the '638 Patent. (Appx48). Dr. Agrawala testified that, at the time of invention, the "executable program code" limitations were well-defined and understood as a known structural term in the art, such that §112 ¶6 would not apply. (Appx1635-1639, Appx1641-1644). He supported his assertions by referring to publications indicating that software performing these functions was well known in the art, and that Amazon admitted this. (Appx1636-1638, Appx1643). This is indistinguishable from *Dyfan*, where a district court erred by ignoring an expert's unrebutted testimony demonstrating that "the claim limitations do not recite 'purely functional language.'" *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1368 (Fed. Cir. 2022).[1]

In dismissing TrackTime's arguments, the district court held TrackTime to an unduly high legal standard that a patent specification must explicitly and overtly identify conventional technologies (*i.e.*, "name a linkage") to avoid indefiniteness. (Blue Br. 23-24). Amazon cites no case holding that, for a "code" limitation to avoid

---

[1] The district court further erred by ignoring an algorithm the specification ***does*** disclose. Figure 16 (Appx79), as described at 24:56-67 (Appx119), discloses a radio button toggle for alternative notations (in this case, sustain/overrule) adjacent issue-color-coded text of interest.

means-plus-function treatment, a specification must spoon-feed that prior technologies contain a claim limitation before a court may conclude that persons of skill in the art understand this fact. Amazon has failed to support the indefiniteness ruling. The Court should reverse, vacate and remand on the ’978 Patent.

## II. JMOL Denial for the ’638 Patent Was Erroneous

### A. Amazon Music Infringes Claim 9 of the ’638 Patent

The district court erred by not finding that Amazon Music infringed claim 9 as a matter of law with its tap-to-jump feature. (Blue Br. 25-33). Amazon only disputes limitations 9[d] (the “performing a data lookup” step) and 9[e] (the “seeking” step), but TrackTime showed that Amazon Music unquestionably practices these limitations. (Blue Br. 27-30). Amazon concedes with its silence that the district court erred in faulting TrackTime for not addressing “each claim limitation.” (Blue Br. 32; Red. Br. 37-43). For limitations other than 9[d] and 9[e], the parties agreed that Amazon Music falls within their plain meaning.

For limitation 9[d], Amazon Music performs the data lookup on a LyricsLine object containing data parsed from the lyrics JSON file (the synchronization index), which Amazon contends does not involve “using” the synchronization index. (Red Br. 38-39). If one cuts a lemon into slices, and then uses the slices to make lemonade, it would be absurd to say that one did not “use” the lemon to make the lemonade. The same logic applies here. Amazon also fails to address TrackTime’s point that

adding an extra step (parsing the synchronization index into an in-memory format to facilitate data lookup) does not negate infringement. (Blue Br. 28-29). Amazon thus fails to rebut that its trial argument was legally insufficient, meriting JMOL. *See Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1324 (Fed. Cir. 2001).

For limitation 9[e], Amazon asserts that the "seeking" claim limitation requires a file search and determination, and that "TrackTime cannot show infringement by pointing to an already downloaded, identified, and opened song." (Red Br. 43). Amazon wrongly adds this limitation to the claims, having waived and never advocated that claim construction. (Blue Br. 29-30; *compare* waiver authority cited at Red Br. 26). Nevertheless, Amazon itself admits that "during playback, the device has already accessed and downloaded the lyrics and ***partially*** retrieved the song." (Red. Br. 39, emphasis added). That is, the song in Amazon Music is not always fully downloaded. When jumping to a new lyric, Amazon Music checks to see if that portion of the song is downloaded before jumping to that portion of a song. (Appx5815, Amazon Rule 30(b)(6) trial testimony that after looking up a start time of a lyric, Amazon Music would "***try*** to move the audio to that start offset" and that "[i]t would almost certainly not always be the case" that "the chosen start time is already streamed into the device as a music block," emphasis added). Amazon Music infringes even under Amazon's flawed, untimely construction.

But this Court need not even reach that question. As noted elsewhere, the jury ***did not*** apply Amazon's construction when evaluating limitation 9[e]. The jury found Toub anticipates, and Amazon only presented its Toub anticipation theory based exclusively on TrackTime's plain meaning understanding of limitation 9[e]. (*See infra*, Section III.B). Hence, the jury's nonreexaminable finding is that the "seeking" limitation is present in Amazon Music (like it is in Toub) merely since the music changes to a new playback position after text selection. In short, since the jury already sided with TrackTime on limitation 9[e] (based on its choice to apply TrackTime's understanding of its scope), JMOL is proper if TrackTime's substantial evidence argument succeeds just on limitation 9[d].

Therefore, the Court should reverse the district court's denial of JMOL of Amazon Music's infringement of claim 9.

### B. Claim 9 is Patent Eligible

Amazon fails to refute TrackTime's showing that claim 9 is not directed to an abstract idea under *Alice* Step 1. Amazon argues that individual claim limitations, when isolated, pre-existed in the prior art. (Red Br. 13-16). This is not the proper inquiry. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) ("Eligibility and novelty are separate inquiries."). Instead, to decide *Alice* Step 1 issues, this Court looks to whether the claims are directed to a specific means or method that improves the relevant technology, rather than simply

being directed to a result or effect that is itself the abstract idea. *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024). Claim 9 is not abstract under this legal standard.

Claim 9 recites a specific method. Ignored by Amazon, claim 9 when read as a whole requires performing a lookup using information from a touch gesture made on a word or range of words. Amazon's brief never quotes the claim term "lookup" within its patent eligibility section, thus confirming its failure to confront the claim's specific method. (*See* Red Br. 13-22, lacking any reference to "lookup"). Amazon instead embraces the district court's logic-defying conclusion that the inventor directed claim 9 to practicing a tiny prior art fraction of the claim: "using an index to synchronize text and multimedia." (Red Br. 13). The focus of the claimed ***advance*** definitionally cannot be a ***known-to-be-prior-art fraction*** of a claim, and is not here.

Specificity to negate *Alice* Step 1 exists here. No prior art disclosed claim 9's combination and specificity, particularly on a mobile device: (1) words displayed from an index -then- (2) gesture onto such words -then- (3) lookup of the gestured word using the index -then- (4) output of t1 from the index corresponding to such gestured word -and finally- (5) use of t1 to seek to a new multimedia position. Nor is the final result abstract: a concrete skip in media playback position that anyone can see and/or hear.

Amazon also ignores that the specification touted the claimed method's speed and ease over prior technologies such as karaoke and closed captioning, and accuracy improvement over scrub bars. (*See* Red Br. 13-22, ignoring these points from Blue Br. 10, 36, 40). Amazon distorts almost four columns of patent text when arguing "the patentee copied [tap-to-jump] from other software." (Red Br. 14, citing Appx108-112, 1:20-62 and 6:9-9:23). The record proves the opposite. The patent states that "***no*** transcript management utility [pre-existed] where the user may perform a gesture on the text to cause the multimedia to jump to a desired location and begin playback." (Appx110, 6:29-33, emphasis added). Amazon's record citations contradict its argument.

Amazon's cases are also inapposite, because claim 9 does not, at a high level of generality, simply "obtain[], manipulat[e] and display[] data," "retrieve data or navigate among displays," "creat[e] an index . . . to search for and retrieve data," "display a more limited data set to a user" after user selection of a part of a map, or "present[] the results of . . . collecting and analyzing information." (Red Br. 13, Amazon characterizations of caselaw). The specificity noted above disproves Amazon's caselaw comparison.

This is why Amazon cannot distinguish *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) and *Data Engine Technologies LLC v. Google LLC*, 906 F.3d 999, 1009 (Fed. Cir. 2018). In a footnote

(Red Br. 16 n.3), Amazon merely names factual details from these cases without attempting to explain why they matter. On the other hand, TrackTime cited their holdings and analyses, to prove that they control the outcome here and lead to eligibility at Step 1. (Blue Br. 35-36, noting their emphasis on "technological problem" solving, and "specific implementations" of user interfaces).

When addressing *Alice* Step 2 (if the Court needs to reach it), Amazon again ignores TrackTime's argument. TrackTime showed that the district court's articulated abstract idea leads logically to technologies that are ***not*** claim 9 (*e.g.*, karaoke and closed captioning technology). (Blue Br. 37-40). Amazon thus cannot refute that an inventive concept beyond the alleged abstract idea exists.[2] And Amazon cannot refute that its sole evidence on Step 2 (expert testimony invoking "logic") failed to apply the "well understood, routine, and conventional" legal standard that caselaw requires. Its argument to this Court assumes out of existence the district court's articulation of the abstract idea, replacing it with the very combination that TrackTime invented. (Red Br. 19, recounting its expert ***assuming***

---

[2] At Step 2, the declared abstractness provides a baseline for the analysis. *See Cosmokey Sols. GMBH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1097 (Fed. Cir. 2021). There is a logical sliding scale within this legal framework: if a court picks a single limitation as the abstract idea, all claim limitations other than that abstract idea come available for demonstrating unconventionality.

tap-to-jump was the "abstract idea," and arguing "logically" the rest of the claim was conventional after this hindsight revision of the district court's holding).

Amazon also accuses TrackTime of disfavored invocation of claim-novelty in order to show inventive concept. (Red Br. 17). But TrackTime instead pointed out that Amazon bore a clear and convincing burden of proof, but failed to show that the ordered combination within claim 9 beyond and apart from the alleged abstract idea was well understood, routine and conventional. (Blue Br. 37-40). TrackTime demonstrated that Amazon did not show that any prior art contained the ordered combination, which is different from Amazon's separate failure to show anticipation of claim 9. Amazon cites *Synopsys, Inc. v. Mentor Graphics Corp*., 839 F.3d 1138, 1151 (Fed. Cir. 2016). But in that case, the patentee wrongly relied on the novelty of the articulated abstract idea to show unconventionality. *Id.* TrackTime does not do so here. TrackTime instead wins under Step 2 because no prior art contained the ordered combination of features beyond and apart from the articulated abstract idea.

Finally, Amazon concedes that Sanction II (cited by its expert as conventional prior art) did not operate on a mobile device, and used mouse clicks instead of gestures. (Red Br. 21). Amazon responds that claim 9's "gesture" distinction "swaps one conventional user interface for another." (Red Br. 21). Caselaw forbids this argument, instead requiring separate proof that the "ordered combination" was so long in use to have become conventional, not just the individual limitations.

*Berkheimer v. Hewlett-Packard Co.*, 881, F.3d 1360, 1369 (Fed. Cir. 2018). If a piece must be "swapped" to contrive the ordered combination, it means that the ordered combination never existed in the first place—proving patent eligibility.

### C. Claim 9 Is Not Anticipated or Obvious

#### 1. Toub Does Not Anticipate

TrackTime demonstrated that Toub does not disclose claim 9's "mobile computing device" or its "touch-sensitive input interface gesture performed on a portion of said viewing screen corresponding to a word or range of words." (Blue Br. 41-43). In response, Amazon mis-cites *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 24-25 (Fed. Cir. 2012). (Red Br. 22). There, this Court stated, *using italic-emphasis*, that an infringer's testimony "must . . . explain, *in detail*, how each claim element is disclosed in the prior art reference" to qualify as "substantial evidence." *Id.*, at 24. Amazon did not give such "detail" at trial.

Amazon first argues that Toub's passing reference to mobile telephones or pocket computers being "suitable for use with the invention" was enabling. (Red Br. 23-24). But this avoids TrackTime's main point—that "the principles of the present invention aren't clear . . . it's vague," prompting someone to do "[a]bsolutely nothing, it gives no information to a person of ordinary skill that can prompt you to do anything, basically." (Appx6380). Amazon does not refute this point from Dr. Hernandez, nor did any testimony at trial. Toub lacks any disclosure of which

"principles" from among its dozens of paragraphs a reader should supposedly practice on these smaller devices. *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1370 (Fed. Cir. 2009) (reference must disclose limitations "arranged as in the claim" to meet stringent anticipation test).

Amazon next argues that Toub's "touch-input device" meant a touchscreen. (Red Br. 25). But Toub uses the term "click" (a mouse-specific term), not "tap" (a touchscreen term) (Appx8520-8526 ([0008], [0042], [0053], [0060]), never using the term "tap" or "tapping." (*See* Red Br. 25, incorrectly stating the reference states "tapping"). Amazon boasts that its expert testified that "touch-input device" means a touchscreen. (Red Br. 25, citing Appx6332, 824:7-11). But that one conclusory, unexplained sentence on redirect was untethered to anything the reference states or that persons of skill in the art understood, thus cannot save the verdict from JMOL. Conflicting testimony alone will never escape JMOL, when "the evidence overall" makes "only one finding on the point reasonable." *MobileMedia Ideas LLC v. Apple, Inc*. 780 F.3d 1159, 1168 (Fed. Cir. 2015); *see also id.*, at 1172 (conclusory expert testimony is not substantial evidence).

This principle applies. Amazon's one-sentence expert testimony at Appx6332 that touchscreen "means exactly the same thing" as "touch-input device" is not only

flimsy on its face.[3] It is tantamount to the *MobileMedia* testimony this Court rejected as conclusory: "I don't see evidence for that." 780 F.3d at 1172.

The clincher is that Amazon ignores how TrackTime showed that Toub's one use of the term "touch-input device" resides in its list of "input components," whereas Toub uses the ***next*** sentence to describe output components such as "screen displays." (Blue Br. 42, citing Appx6381, Appx8522 [0033]). Amazon cannot explain away the fact that Toub discloses a "touch-input device" as distinct from either an "output" or a "screen display." The record therefore supports one conclusion—that Toub does not disclose gestures onto words of a screen to perform its particular "jump." Even if a touchscreen were a possible or probable result from Toub's disclosure of "touch-input device," this actually disproves anticipation. *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 639 (Fed. Cir. 2011) (anticipation requires more than probabilities). Toub discloses its method on a big computer using a mouse, at most using a "touch-input device" that is ***not*** an "output" or a "screen display."

---

[3] Amazon's other citations to Appx6135-6136 and Appx6140 (Red Br. 25) do not contain testimony stating touch-input device means touchscreen.



Fig. 1C

(Annotated Appx8516).

### 2. LiveNote Does Not Anticipate

Amazon's anticipation argument for LiveNote wrongly combined disparate parts of the product in a way that never existed. This violates the Court's requirement that an anticipatory reference must "show all of the limitations of the claims arranged or combined in the same way as recited in the claims." *Net MoneyIN*, 545 F.3d at 1370. Amazon fails to point to a single reference within the LiveNote documentation that shows navigating media via a transcript using anything other than a mouse click on a big desktop PC.

For example, Amazon asserts that "LiveNote enabled users to use the transcript to jump to the corresponding location in the video using a 'tapping' gesture

on a 'tablet PC.'" (Red Br. 27). But Amazon's citation to the underlying LiveNote documentation at Appx8762 and Appx8906 only shows using a tablet PC for adding annotations, not for navigating media via a transcript. Amazon further asserts that LiveNote "disclos[es] a 'tablet PC' that can accept human gesture to navigate a transcript." (Red Br. 27). But again, Amazon points only to the same two pages of the LiveNote documentation. Amazon instead relied on a different part of the LiveNote documentation to show media/transcript navigation. (Red Br. 27, citing Appx8844). Appx8844 does not describe a tablet PC but instead a user navigating a transcript by clicking with a mouse (*i.e.*, on a desktop computer). And Amazon's only other point-citations to LiveNote documentation are empty of relevant content. (Red Br. 27, citing Appx8719, Appx8874, which lack relevant disclosure).

Amazon failed to show all claim limitations are arranged or combined in the same way in LiveNote as recited in the claims. The jury lacked substantial evidence of anticipation. *See Whitserve*, 694 F.3d at 24. The Court should reverse and grant JMOL for TrackTime that LiveNote does not anticipate.

### 3. Master Does Not Anticipate or Render Obvious

Amazon fails to rebut that Master is not prior art, and even assuming it is, cannot support that Master anticipates or renders obvious claim 9. The key dates supporting TrackTime's earlier conception are shown in the timeline below.




TrackTime antedates Master with an invention date before December 2, 2010. (Blue Br. 46-48). While Amazon criticizes TrackTime witnesses for not mapping the evidence to the claims (Red Br. 35), Mr. Evans did precisely that when he testified about his initial sketch from July 11, 2008 and his June 2009 presentation sent to Mr. Maynard. Mr. Evans described how the sketch showed an iPhone (a mobile device) and a synchronization index with a corresponding transcript and video, along with the exact phrase "Tap-To-Jump," with the "same idea" appearing in the later presentation. (Appx5628-5632, Appx5687-5690; Appx8191; Appx8239). Amazon faults TrackTime for failing to corroborate Mr. Evans' earlier conception date with independent and contemporaneous evidence. (Red Br. 35-36). This ignores Attorney

Maynard and the August 2009 email to him. (Appx8260-8295). Even though Mr. Maynard did not remember the specific words of his July 2008 conversation with Mr. Evans, he did remember and recount the substance of it—"tap and bounce back and forth between the audio visual component and the written component o[f] the transcript." (Appx5760-5761; Appx7736-7742).

Additionally, Amazon ignores TrackTime's November 23, 2010, draft patent application. This near-final draft of the application (Appx9131-9178) unquestionably demonstrates Mr. Evans' possession of the claimed invention. (Blue Br. 47). The district court erred in excluding this from evidence, as discussed below. Nonetheless, Amazon fails to rebut that the jury at least heard Mr. Evans testify that he provided this draft to his attorneys at Fish & Richardson on November 23, 2010. (Blue Br. 47). Amazon also fails to rebut that Mr. Evans made a $9,500 payment to the firm for work during that critical 33-day period before the provisional application was filed on January 3, 2011. (Blue Br. 47-48).

Amazon never argues no-diligence within the 33-day critical period. Amazon instead attacks a 16-month period. (Red Br. 36-37). But that period is irrelevant because Master's September 2009 emails are legally insufficient to show conception by Master. Master himself admitted that his September 2009 emails never mention touch gestures or using gestures on a lyric. (Appx6073-6074).

Amazon ironically attacks TrackTime's earlier conception by citing the Court's decision in *Juicy Whip v. Orange Bang*, 292 F.3d 728, 743 (Fed. Cir. 2002). (Red Br. 35). However, that was a prior public use corroboration case. *Id*. It does not apply to TrackTime as patentee antedating Master, but it does apply to Master's September 2009 dating attempt at invalidating the '638 Patent. A patentee can corroborate with even unwitnessed documents, so long as consistent inventor-independent evidence also exists (as it does here, with Maynard's testimony and several documentary exhibits). *See Apator Miitors ApS v. Kamstrup A/S*, 887 F.3d 1293, 1297 (Fed. Cir. 2018). Applying *Juicy Whip* shows that Master did not corroborate any September 2009 date since his documents lacked many claim limitations, but TrackTime's dates were amply corroborated.

And anyway, the content of Master's application does not invalidate. TrackTime established that no trial evidence existed to support Master's provisional suggesting or disclosing limitation 9[d], since it nowhere discloses performing a data lookup preceding the audio position move. (Blue Br. 49-50).[4] The only evidence showed that a math algorithm helps change audio position, not a lookup. (Blue Br. 50). Amazon responds with nonresponsive record citations. (Red Br. 30, citing

[4] Amazon's footnote argument (Red Br. 34 n.8) that Amazon may rely on subject matter outside the Master provisional application to assert §102(e) invalidity is incorrect. *In re Riggs*, _ F.4th _, 2025 U.S. App. LEXIS 6761, *12-19 (Fed. Cir. Mar. 24, 2025).

Appx6167 (stating nothing about lookups), Appx6316-6317 (stating nothing about lookups) and Appx6161-6162 (stating nothing about lookups, never even addressing limitation 9[d])). This was not a matter of competing experts. This was abject failure by Amazon to show a key claim limitation in the prior art. Master does not disclose limitation 9[d]'s lookup, no trial testimony said it did, the jury should not have found it present, and the district court should have granted JMOL on this ground.

JMOL was proper for both anticipation and obviousness. TrackTime's brief showed that Amazon's only obviousness testimony (a mere two sentences) focused on LRC file location, not on the germane question of whether it would have been obvious to modify Master to contain limitation 9[d]'s data lookup. (Blue Br. 50-51, citing Appx6167). Amazon's response continues Amazon's strategy of non-responsiveness. Amazon does not even acknowledge the absent-lookup non-obviousness ground. (Red Br. 31-32). Nor does it point to any expert testimony beyond what TrackTime showed on Appx6167. Amazon waives any response, and concedes nonobviousness of limitation 9[d] ("lookup") through its appellate silence.

## III. A New Trial is Warranted On the '638 Patent

### A. Clear Weight of the Evidence Warrants a New Trial

A new trial is necessary because the jury's verdict went against the clear weight of the evidence. (Blue Br. 54-56). Amazon waives response to this argument, contending that TrackTime failed to argue prejudicial error on subject matter

eligibility under §101 and anticipation based on LiveNote. (Red Br. 44). Amazon is incorrect. TrackTime specifically argued that the clear weight of the evidence supports subject matter eligibility of the ’638 Patent and non-anticipation by LiveNote (Blue Br. 55). It is Amazon who waived appellate argument. *See United States v. Carmichael*, No. 22-1679, 2023 U.S. App. LEXIS 7812, *10 n.9 (3d Cir. Apr. 3, 2023) (nonprecedential) (describing that “failure to respond to arguments on a particular point ‘waives, as a practical matter anyway, any objections not obvious to the court to [a] specific point[] urged’ by the other party on appeal”). Although Amazon presents a one-sentence footnote that TrackTime’s weight of the evidence argument “fails for the same reasons” as its JMOL arguments (Red Br. 44 n.11), these are different standards. *See TQ Delta, LLC v. 2Wire, Inc.*, No. 1:13-cv-01835-RGA, 2019 U.S. Dist. LEXIS 143947, *8 (D. Del. Aug. 23, 2019) (noting a “less rigorous” standard for a new trial).

### B. The Inconsistent Verdict Warrants a New Trial.

The jury’s unchallenged finding that Toub discloses claim 9’s “performing a data lookup” and “seeking” steps (elements 9[d] and 9[e]) is fatally inconsistent with the jury’s finding that Amazon Music does not infringe. (Blue Br. 52-54). This factually inconsistent verdict shows the jury was confused and requires a new trial. *See Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1345 (Fed. Cir. 2009). Amazon fails to reconcile the inconsistency.

Amazon repeats the district court's holding that Toub and Amazon Music were not proven at trial to be the same with respect to these limitations. (Red Br. 45). But this sidesteps TrackTime's argument. TrackTime does not dispute that Toub uses a transcription index file with "snippets" of text and matching times for the "performing a data lookup" and "seeking" steps. Nor does TrackTime dispute that Amazon Music uses lyrics JSON files parsed into LyricsLine objects with matching times to perform the same steps. (Red Br. 45). Rather, TrackTime pointed out that the jury verdict that Toub disclosed the "performing" step was (properly) agnostic whether a lookup happened "on" the file containing the index, versus on a data structure populated from that file, since that Toub verdict turned on generalized expert testimony that it was enough just to use a time code to look up a time within a video. (Blue Br. 53). And, the jury based its finding of Toub disclosing the "seeking" step explicitly on Amazon advocating ***TrackTime's*** claim scope—which did not require the limitations Amazon inconsistently argued for non-infringement. (Blue Br. 53-54).

Amazon tries to excuse inconsistent outcomes by citing *01 Communique Lab., Inc. v. Citrix Sys.*, 889 F.3d 735, 742 (Fed. Cir. 2018), urging that there is nothing wrong with the "conditional adoption of a patentee's interpretation for purposes of invalidity, and this does not warrant a new trial." (Red Br. 46). In *01 Communique Lab.*, the defendant presented an "alternative" defense that, if the plaintiff's proposed

construction were adopted, the claims at issue would be invalid over the prior art. This Court found nothing wrong with a defendant doing so, but nothing in its holding allowed an eventual verdict-inconsistency to stand. *01 Communique Lab* did not analyze Rule 59, since that appeal turned on other issues. *See id.* That case does not refute that a defendant making such conditional arguments must face the consequences, including risk of an inconsistent verdict justifying a new trial.

Amazon lastly attempts to argue that TrackTime waived this argument. (Red Br. 46-47). Under a general verdict, inconsistency objections must occur before the jury is discharged. But this was a special verdict. *See Function Media, L.L.C. v. Google Inc.*, 708 F.3d 1310, 1329-1330 (Fed. Cir. 2013). The Court in *Function Media* described that for general verdicts, "the jury announces only the prevailing party on a particular claim," while for special verdicts, "the jury finds the facts while the court applies the law." *Id.* at 1329. The Court noted that a verdict where a jury answered yes/no questions on anticipation and invalidity for each claim of a patent was a "closer question" as to whether it was a general versus special verdict. *Id.* The Court in *Function Media* resolved this "closer question" to hold a verdict "general" when it lacked specificity as to prior art references, or accused infringer instrumentalities. In contrast here, the district court ensured that the invalidity and infringement sheets were for special verdicts under Fed. R. Civ. P. 49(a), by requiring Amazon to include specific theories cross referenced against specific prior art

references and specific Amazon instrumentalities. (Appx5378-5387). This brought "the jury process into the open so that 'all can see what has been done' as expected in a special verdict." *Function Media*, 708 F.3d at 1330. Nothing required a pre-discharge objection to the special verdict to preserve inconsistency issues.

### C. Exclusion of TrackTime's Draft Patent Application Warrants a New Trial

The district court erred by excluding Curt Evans' draft patent application dated November 23, 2010, and that this exclusion justified a new trial. (Blue Br. 57-60). Amazon contends that the district court was within its discretion to exclude evidence under Rule 403 and that the exclusion was harmless. (Red Br. 49-52). Amazon is wrong.

First, Amazon concedes through silence that the district court erred in asserting that the native document with metadata "had not been produced in discovery." (Blue Br. 59). Amazon also concedes through silence that it sprung the metadata issue on TrackTime for the first time at trial after failing to raise the dispute in expert reports or depositions. (Blue Br. 57). Though Amazon criticizes TrackTime's expert for not having disclosed opinions about the metadata in his expert report (Red Br. 50), that is false because his opening expert report quoted all of the metadata to explain the file's date-corroboration. (Appx3935-3936). It was Amazon and Amazon's expert, in rebuttal, who defaulted ever pointing out any supposed inconsistency in the "Last Printed" date—an easily-explained artifact of

how Microsoft WORD operates that did not indicate flaws in other date metadata. (Blue Br. 58-59).

Regardless, the Court should find that the district court erred in excluding the draft application. Amazon virtually ignores *Haskell v. Colebourne*, 671 F.2d 1362, 1365-66 (C.C.P.A. 1982) (holding draft patent application to be contemporaneous and independent evidence of conception), attempting only to distinguish it on the false ground that this Court should not apply a USPTO-interference holding to infringement trials. (Red Br. 51 n.16). *Contra Mosaic Brands, Inc. v. Ridge Wallet LLC*, 55 F.4th 1354, 1363 (Fed. Cir. 2022) (citing interference caselaw for standards covering infringement-case corroboration). Amazon thus argues that the draft application was not "contemporaneous with the time of invention and independent of the inventor," citing the Court's decisions in *Juicy Whip*, 292 F.3d at 743 and *Apator*, 887 F.3d at 1295. (Red. Br. 48). But neither decision applies.

The Court in *Juicy Whip* stated that evidence of corroboration "preferably" comes from records contemporaneous with the invention. 292 F.3d at 743. *Juicy Whip* also concerned corroboration standards for establishing a ***prior art*** public use to invalidate a patent under clear and convincing evidentiary standards—not whether a patentee could prove antedating conception. *Id.* In *Apator*, the Court refused to credit an inventor's emails and documents where the only evidence tying them to an earlier date came from the inventor's own testimony. 887 F.3d at 1296-97. But, the

Court acknowledged that an inventor's own "emails and drawings, like unwitnessed laboratory notebooks, have some corroborative value." *Id.* at 1297; *see also Plexxikon Inc. v. Novartis Pharms. Corp.*, 631 F. Supp. 3d 823, 838 (N.D. Cal. 2022) (distinguishing *Juicy Whip* and holding 2007 patent application corroborated 2005 conception). Here, the draft patent application supported Mr. Evans' earlier conception under the rule of reason, together with other contemporaneous documents and testimony from Messrs. Evans, Maynard and Rzonka.

Amazon also cites *Woodland Tr. v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1369 (Fed. Cir. 1998), to argue that an inventor "cannot corroborate his conception through his own testimony." (Red Br. 50). Like *Juicy Whip*, *Woodland* concerned whether earlier conception of a prior art reference was corroborated. 148 F.3d at 1373. There was also a total "absence of any physical record to support the oral evidence." *Id.* These are different from the present case, and in any event, neither decision attempted to overrule *Haskell*. *Accord Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1230 (Fed. Cir. 1994) (draft patent application corroborated conception).

Amazon fails to refute the substantial prejudice to TrackTime. At minimum, whether Master qualifies as prior art was unquestionably relevant. Amazon inconsistently relies upon a Master personnel-evaluation and a chain of e-mails that discusses lyrics-synchronization—neither exhibit ever referring to tap-to-jump—to

corroborate an alleged September 2009 tap-to-jump conception date by Master. (Red Br. 36, citing Appx8419-8424). This argument shows Amazon advocates a double standard. If Amazon truly believed those September 2009 documents embody proper corroboration by Master, it cannot reasonably deny that TrackTime's nearly-complete draft patent application suffices. Under *Juicy Whip*, Master did not establish entitlement to September 2009. (*See supra*, Section II.C.3).

The district court's exclusion of the draft patent application had a profound impact on the case—including misguiding the jury on whether TrackTime antedated Master. Exclusion also mis-set the date for what was unconventional and/or non-obvious at the time of the invention. This merits a new trial.

### D. Exclusion of Amazon's '658 Patent Warrants a New Trial

Finally, the district court erred by excluding Amazon's '658 patent, justifying a new trial. (Blue Br. 60-62). In a single conclusory sentence, Amazon downplays Amazon's '658 patent as being "unrelated" and only including "similar sounding language." (Red Br. 52). However, factual statements within Amazon's '658 patent—that its tap-to-jump consisting of "navigat[ing] a playback of media content based, in part, on . . . selecting the text" overcame "conventional approaches"—are relevant to the unconventionality of the '638 Patent. (Blue Br. 61, citing Appx9122). The '658 patent even provides examples of conventional technology, such as moving a "scrub bar." (Appx9122).

Amazon says factual statements in patents are immune from admissibility, citing *Solvay, S.A. v. Honeywell Int'l, Inc.*, 886 F. Supp. 2d 396, 410 (D. Del. 2012), *aff'd*, 742 F.3d 998 (Fed. Cir. 2014) and *Morsa v. Facebook, Inc.*, 77 F. Supp. 3d 1007, 1014 (C.D. Cal. 2014), *aff'd*, 622 F. App'x 915 (Fed. Cir. 2015). But these cases do not support Amazon. Both concern contrary positions taken during prosecution of unrelated patents (not within a patent). Attorney argument during prosecution is far different from factual technological statements about §101/unconventionality on the face of a patent, as with Amazon's '658 patent.

The district court further abused its discretion in failing to weigh the probative force of Amazon's '658 patent under Rule 403. This runs counter to Third Circuit requirements. *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 85 (3d Cir. 2019) (holding "a strong presumption that relevant evidence should be admitted" and "require[ing] weighing" the probative force of the evidence against the potential prejudice) (quotations omitted). While the '658 patent was unfavorable for Amazon on unconventionality under §101, it was not unfairly prejudicial. *See United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) ("Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case.") (quotation omitted).

Amazon also argues that the exclusion of Amazon's '658 patent was not prejudicial to TrackTime. (Red Br. 53). Amazon asserts that TrackTime's expert Dr.

Hernandez "opined that Amazon's patent supports the unconventionality of *individual elements* of the patent claims, not any *ordered combination*," and that TrackTime later admitted the individual elements were conventional. (Red Br. 53, citing Appx4947-4949, Appx5383, emphasis in original). Amazon misstates the record. Appx4947-4949 is TrackTime's motion *in limine* opposition regarding Amazon's '658 patent. Appx5383 is the jury verdict form. Neither contains any such statement from Dr. Hernandez about the unconventionality of only individual elements. Contrary to Amazon's assertion, Dr. Hernandez directly opined the opposite. (*See* Appx2286-2289, Dr. Hernandez's rebuttal report on invalidity, where he said that "comparing the claims of [Amazon's '658 patent with TrackTime's '638 Patent] to one another further evidences that, at a minimum, the claimed combination of elements [of the '638 Patent] was not well-known, routine, or conventional. . .").

Accordingly, the district court abused its discretion to exclude Amazon's '658 patent, meriting a new trial.

## CONCLUSION

For the reasons above and in the opening brief, this Court should reverse and/or vacate erroneous rulings on appeal, and remand for further proceedings.

Respectfully submitted,

/s/ Robert Greenspoon

ROBERT GREENSPOON
WILLIAM W. FLACHSBART
DUNLAP BENNETT & LUDWIG PLLC
*Attorneys for Plaintiff-Appellant*
333 North Michigan Avenue, Suite 2700
Chicago, Illinois 60601
(312) 551-9500
rgreenspoon@dbllawyers.com
wflachsbart@dbllawyers.com

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 24-1102

**Short Case Caption:** TrackTime, LLC v. Amazon.com Services LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6999 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ______ lines of text.
- [ ] the filing contains ______ pages / ______ words / ______ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ______).

Date: 04/16/2025

Signature: /s/ Robert Greenspoon

Name: Robert Greenspoon